713 So.2d 1083 (1998)
Phyllis H. CORNETT, Appellant,
v.
Don K. CORNETT, Appellee.
No. 97-01554.
District Court of Appeal of Florida, Second District.
July 17, 1998.
*1084 Phyllis H. Cornett, pro se.
Don K. Cornett, pro se.
DOYEL, ROBERT L., Associate Judge.
The appellant wife seeks reversal of the trial court's denial of her request for permanent periodic alimony. She claims the trial court should either have granted her request for alimony or reserved jurisdiction to make a later determination. Although the evidence in this case was confusing, conflicting, and sometimes fraudulent, we agree with the wife and, accordingly, reverse.
At the time of the final hearing, the parties had been married for almost exactly thirtythree years. They had been separated on and off for three or four years preceding the final hearing. They have one minor child, a son who will turn eighteen in December 1998. They stipulated that the son should have his primary residence with the wife and that she should also have sole parental responsibility.
At the time of the final hearing, the husband had not paid any taxes for 1995 or 1996. His income tax returns for 1990, 1991, and 1992 had not been filed until 1994. These tax returns reflected gross income for these three years of $147,000, $96,721, and $97,000, respectively. The three tax returns also reported net income ranging between $7,498 and $9,499, which reflected overhead from 90% to 95% of gross business income. His business partner, however, testified that the overhead should range between 60% and 70%. This testimony suggests that the husband's actual net income for the years 1990 to 1992 should have ranged from a low of approximately $30,000 to a high of almost $60,000. At the time of the final hearing, he was unemployed but was about to embark upon a course of work in another state at which the trial court found he would net $2,545.59 monthly. The trial court subtracted 18% of this figure, thus finding the husband's after-tax income to be $2,087.31. The trial court used these findings as the basis for determining the amount of child support and, later, in rejecting the wife's claim for alimony.
In trying to determine the wife's income, the trial court was handicapped by the wife's own wrongdoing. The trial court legitimately could not determine what work, if any, the wife had done during the course of the marriage. However, it was clear that she was unemployed at the time of the final hearing. She had lost her job as a real estate agent because, in part, of acts of domestic violence by the husband. Her agency manager found that police contacts related to domestic violence at her place of business were too disruptive to allow the wife to continue affiliation with that agency, especially in light of her overwrought emotional condition resulting in part from the domestic violence. The wife had apparently been unemployed throughout 1996 but had obtained employment as a real estate agent to begin immediately after the final hearing.
The manager of the real estate agency for which the wife worked throughout 1995 testified that the agency had filed federal tax Form 1099 showing the wife had gross income from the agency for that year of $20,654.04. The wife had unspecified business expenses incurred in generating this gross income. The manager indicated that the wife's net income should be at least 60% of the Form 1099 figure. From this testimony, the trial court found that the wife had a gross monthly income of $1,721.17 apparently dividing the gross income figure by twelve, and a net after tax income of at least $1,400 monthly. The trial court's order refers to "W-2" gross earnings, which we take as a reference to the Form 1099 earnings. Although there was no further explanation, because the trial court reduced the husband's net income after expenses by 18% to arrive *1085 at his net, after-tax income, we conclude the trial court also reduced the wife's net monthly income figure of $1,721.17 by 18% to arrive at the $1,400 per month net income figure for the wife. However, while the husband's gross income from self-employment was first reduced by his business expenses, the wife's gross income from her self-employment was not also reduced by any business expense before the 18% reduction for taxes. It was error not to calculate the net monthly income figures in the same manner.
Using the $2,087.31 net income for the husband and $1,400 net income for the wife, the trial court concluded that the husband's guidelines child support obligation was $437.40. Because the child was sixteen years old, the trial court adjusted the figure upward to $500 per month.
The trial court denied the wife periodic alimony of any type, explaining that the enhanced child support the husband was ordered to pay made the husband unable to pay alimony. We find the denial of alimony erroneous in several respects. First, the trial court's order is internally inconsistent on the wife's need for alimony. In one place, after discussing the wife's history of fraudulent conduct, the trial court stated it was "unable to fairly determine if the wife has a legitimate need for alimony." However, subsequently in the order the trial court stated that the wife "clearly shows a need for alimony." Thus, it is not clear whether the trial court believed or disbelieved the wife's contention that she needed support from her husband, and whether such finding was sufficient to overcome the presumption of entitlement to alimony after this long-term marriage. See Staton v. Staton, 710 So.2d 744 (Fla. 2d DCA 1998). Second, as explained above, the net monthly income figure for the wife was improperly calculated, causing the net monthly income ascribed to her to be higher than it should be. This caused her financial picture to be rosier compared to the husband than the evidence supported. Third, in citing the enhanced child support award as a basis to deny alimony the trial court has put the cart before the horse. Pursuant to section 60.30(2)(a)9 and (3)(g), Florida Statutes (1997), the trial court must add to a party's income any alimony received and subtract alimony paid. Thus, in a case in which one party is paying alimony to the other party, alimony, if ordered, must be determined before child support can be calculated under the guidelines. See Stock v. Stock, 693 So.2d 1080 (Fla. 2d DCA 1997). The wife here suffered doubly by first having errors in the calculations of her monthly income showing less of a need for alimony, and then having alimony denied because her husband must also pay child support. Because of these errors and the presumption in favor of alimony in a long-term marriage, which the trial court's findings do not address, we reverse the denial of alimony.
Although we do not disturb any other part of the final order, we must address two areas of concern. The trial court's disposition of what the parties referred to as the "Webber Place" property is confusing. The final order found that the Webber Place property was purchased with commingled marital and nonmarital funds. This finding is supported by the record. The trial court found that there was approximately $28,000 equity in the home. It is unclear where this figure came from. The trial court found that the husband had no objection to the wife retaining all assets except certain enumerated ones, which did not include the Webber Place property. The wife had executed a quitclaim deed to her daughter that the court found to be a deliberate attempt to place a marital asset beyond the husband's reach. The trial court went on to say in its final order: "Were it not for the Husband's expressed desire to relinquish his interest in this asset, the Court would order the asset brought into the marital estate for the purpose of equitable distribution." From this statement one could conclude that the trial court believed the Webber Place property to be a nonmarital asset and that there would be no equitable distribution of it. However, the following provision is also in the final order:
C. The parties are awarded the following as an equitable distribution of assets and liabilities:
....

*1086 (4) As lump sum alimony to the Wife, the Husband shall assume the Transouth lien on the 1985 Chevy S-10, and the Wife shall retain all the parties' furniture and furnishings located in the former marital home on Overbury Place and the Webber Place residence. As additional lump sum alimony, the Wife will receive the Husband's $14,000.00 equity in the Webber Place property.
Evidently, the trial court was attempting to award half of the total equity in the Webber Place property to the wife as lump sum alimony in lieu of equitable distribution. The trial court made this award without making any clear determination whether this asset, or any portion of this asset, was marital property and in spite of the order saying, or at least implying, that the trial court was not considering the Webber Place property as a marital asset. The wife has not complained on appeal of the equitable distribution award, nor has the husband. The wife discusses the Webber Place property as part of her argument that the trial court should have awarded alimony or reserved jurisdiction on the issue. We do not reverse the equitable distribution portion of the order but address the issue only to make clear that, although the trial court characterized the award of the Webber Place property as "additional lump sum alimony," it was not permanent alimony, but alimony in lieu of equitable distribution. Accordingly, on remand, when considering the issue of permanent alimony, the trial court may not consider the Webber Place property as a previous award of permanent alimony. However, if the wife still owns the home, its ownership, the receipt of rent from it, and the payment of expenses applicable to it may be considered in determining her need for alimony.
Additionally, in the trial court, as well as in this court, the wife claimed to have health problems, including trouble with her heart. A review of the trial transcript reveals that only one medical witness was called by the wife. This witness was a physician who saw the wife for the first time within a month before the final hearing. The witness did not have personal knowledge of the wife's key health issue, and specifically denied any ability to testify concerning any alleged heart problem. The trial court made no specific finding on this issue, and it may be considered on remand in determining the wife's need for alimony.
As pointed out above, there were unexplained findings of fact in the final order as well as internal inconsistencies. Unfortunately, the trial court never stated its findings of fact at the final hearing. Instead, the trial court asked each of the attorneys to submit a proposed final order containing findings of fact. The record on appeal does not include the proposed orders received from the attorneys, although the final order may be one of them. On the other hand, the inconsistent findings regarding the wife's need for alimony may be a result of taking parts of two proposed orders to make the final order. This procedure is fraught with danger as evidenced by precisely what occurred here, a final order that cannot be compared with any oral pronouncement by the trial court and that contains irreconcilable inconsistencies and findings. Thus, although this procedure is not illegal, it certainly does not lend itself to the judicial goal of clarity; moreover, because it hampers the reviewing court, it does not lend itself to the further judicial goal of economy.
We reverse the trial court's order with regard to permanent periodic alimony and child support. We remand with instructions that the trial court properly recalculate the parties' incomes, determine whether to award the wife permanent alimony, and then apply the child support guidelines to the parties' incomes after adjusting them for any periodic alimony that may be awarded.
CAMPBELL, A.C.J., and THREADGILL, J., concur.