737 So.2d 1198 (1999)
Jane E. KRANZ, Appellant,
v.
David A. KRANZ, Appellee.
No. 98-3196.
District Court of Appeal of Florida, Fifth District.
July 23, 1999.
*1199 Joan Stefanec Briggs of Adams, Briggs and Briggs, Daytona Beach, for Appellant.
M. Katrina Muse of Muse & Jones, St. Augustine, for Appellee.
PER CURIAM.
We have for review a final judgment dissolving the marriage between Jane ("the wife") and David ("the husband") Kranz. We affirm the judgment insofar as it dissolves the marriage and denies the wife's motion for attorney's fees. However, due to numerous errors in the final judgment, we reverse and remand for further proceedings on several issues.
The parties married on October 26, 1977, and the petition for dissolution was filed on November 26, 1997. Two children were born of the marriage, one of whom is a minor. Some of the issues attendant to the dissolution were resolved by mediation, and the remaining issues were submitted to the court for resolution following a trial.
At the time of trial, the wife was fortyfour years old and the husband was fortyone, and both were in good mental and physical health. The husband has worked for Florida Power and Light since 1981, and the parties relocated many times due to the husband's job. Since 1992, the husband's annual income has been $45,000 or greater, and at the time of trial his gross monthly income was just over $4800.
The wife worked during most of the marriage, including nearly ten years at Southern Bell (now BellSouth). She quit her Southern Bell job in 1990 because her commute of 55 miles each waynecessitated by a move due to the husband's job a year earlierwas too lengthy. The husband did not oppose the wife's resignation, and at the time of resignation the wife was earning approximately $22,000 annually. The wife did not work again until 1993, at which time she gained employment with Wal-Mart. At the time of trial, the wife was working for Wal-Mart earning $6.30 per hour or about $13,000 annually.
The wife is a high school graduate and completed eight credits toward a criminology degree at Miami Dade Community College in 1985 and 1986. She attended Brevard Community College for several months in 1992 and obtained a medical terminology certificate in a 36-hour course. She never received a job in the medical field; she had applied at a doctor's office but would have earned the same salary she commands at Wal-Mart. However, the wife acknowledged that if she dedicated time to the medical field she could earn more than her present salary.
In March 1997, the wife moved out of the marital home to live with her sister in Miami after the husband expressed doubts about the marriage. During the separation she lived on her credit cards and the husband paid the mortgage and other household expenses. On the advice of her attorney, the wife moved back into the home in September 1997, and the husband continued to pay the mortgage and other household bills as he had prior to and during the separation.
Both parties submitted proposed final judgments as requested by the trial judge. The court signed and entered the final judgment submitted by the husband, without alteration. The final judgment denies the wife's request for alimony and attorney's fees, awards the husband credit in the amount of $2650 for mortgage payments made after the separation, notes *1200 that child support had been established at $650 during the pendency of the case but also states that the wife receives $700 in child support, and lists the property and debt distributed to each party. Several of the findings in the order are without record support and require reversal.

CHILD SUPPORT
The wife challenges the "$700 child support award" as more than a 5% deviation from the guidelines amount. However, in fact the order fails to impose any child support obligation on the husband; it merely reflects two different amountsit notes a $650 temporary child support obligation and also refers to a $700 child support award in its discussion of alimony. This discrepancy and the omission of an express obligation require reversal. On remand, a new child support worksheet should be prepared, and if the court chooses to impute income to the wife it should use the imputed amount in the computation of the husband's child support obligation. If the amount deviates by more than 5% from the guideline amount, the court should state written reasons for such deviation as required by paragraph 61.30(1)(a), Florida Statutes (1997).

ALIMONY
The wife next challenges several findings regarding the decision not to award her alimony. First, she is correct that the child support paid by the husband should not be included in her income for the purpose of determining alimony. The child support computation provisions state that in computing net income, alimony received is counted as income to the payee spouse and alimony paid is deducted from the payor spouse's income. § 61.30(2), (3), Fla. Stat. (1997). This indicates that alimony should be computed before child support, not vice versa. See Cornett v. Cornett, 713 So.2d 1083 (Fla. 2d DCA 1998) ("[I]n citing the enhanced child support award as a basis to deny alimony the trial court has put the cart before the horse. Pursuant to section 60.30(2)(a)9 and (3)(g), Florida Statutes (1997), the trial court must add to a party's income any alimony received and then subtract alimony paid. Thus, in a case in which one party is paying alimony to the other party, alimony, if ordered, must be determined before child support can be calculated under the guidelines.").
The finding that the wife enjoys the same standard of living as she did during the marriage is also erroneous. The order merely notes that the wife pays less rent now than the mortgage payment on the marital home, and then concludes that her standard of living is the same. The wife is correct that the order places undue emphasis on the fact that her housing obligation is lower than during the marriage, especially considering that the husband paid the mortgage and that the wife is now living on significantly less income than she enjoyed during the marriage. She testified that during the marriage, every house purchased was nicer than the previous home; the parties ate out a lot, owned nice cars and two boats; and the husband belonged to a golf club. The wife is now living in a duplex rather than a house, and her financial affidavit does not reflect expenditures commensurate with the marital standard of living.
The order also erroneously refers to the wife commuting for nine years to her Southern Bell job, apparently in support of the finding that she is unreasonably refusing to commute from Flagler County to Orlando or Jacksonville. In fact, the wife only had to make a lengthy commute for one year after the parties moved for the husband's job, and the parties agreed for her to quit because the drive was too far and the family no longer needed the wife's income.
The finding in the order that the parties have equivalent financial resources is also without support. Although the parties did receive a roughly equivalent distribution of assets, the husband has far superior earning power, earning about four times as much as the wife. Even with the imputation of income at her former Southern Bell *1201 salary, she earns less than half of what the husband makes, and she was ordered to pay more of the debt. There is no evidence to support the conclusion in the order that the wife could earn $30,000 to $35,000 based on her education. Although the wife acknowledged that she could earn more than her current salary, she did not state that she could earn the amount provided in the order, nor was any other evidence presented in this regard. The order also overemphasizes the wife's education level. Her eight criminology credits and medical terminology certificate are not the equivalent of a "college education" as repeatedly noted in the order. Even with a four-year degree the wife could not necessarily earn as much as stated in the order, and the order improperly focuses on courses taken rather than earning capacity.
The wife also challenges the finding that the husband's net income is only $2781 after the payment of child support. The husband's financial affidavit reflects net income of $2831only $50 higher than the orderbut, as noted above, the alimony question should have been considered prior to the child support determination. The wife is also correct that there is absolutely no evidence to support the finding that there is only a $372 "negligible difference" in the parties' incomes or that such difference is used by the husband "for work related expenses in order to generate income for his child support obligation."
The wife also argues that there is no basis for imputing income to her. She testified that prior to starting work at Wal-Mart in 1993 she tried to get rehired at BellSouth but was unsuccessful. However, she has an extensive work history and conceded that she could earn more than her current salary if she applied herself in the medical field, and therefore imputation of some additional income beyond her $13,000 annual Wal-Mart earnings appears appropriate.
The alimony order does not mention the length of the marriagejust over 20 yearsand this is a factor to be considered in a determination of whether to award alimony. § 61.08(b), Fla. Stat. (1997). Indeed, it has been noted that where there is a long-term marriage, a presumption of entitlement to alimony arises. See, e.g., Cornett v. Cornett, 713 So.2d 1083 (Fla. 2d DCA 1998); Staton v. Staton, 710 So.2d 744 (Fla. 2d DCA 1998).
In light of the numerous unsupported findings in the order, remand is required for reconsideration of the alimony issue. This appears to be an appropriate case for the award of some type of alimony to the wife. The financial affidavits tend to show that the wife has a need for alimony even with the imputation of income to her, and the husband appears to have the ability to pay it. On remand, in support of its decision the court shall enter factual findings that are supported by record evidence.

CREDIT CARD DEBT
The wife asked the court to require the husband to pay half of her credit card debt, but the court denied the request and set forth findings in alleged support of its decision. Again, the order states that the parties are in equivalent financial circumstances, a conclusion which, as noted above, is erroneous. The order again overemphasized the wife's "superior education" in this section.
Additionally, the order's conclusion that the wife's income during the marriage was used entirely for her own benefit is without record support. The husband testified that the wife's paycheck was used to pay for household items, clothing, and food, and the wife added that "her" money was used for babysitting and family entertainment as well. It is also somewhat disingenuous for the husband to argue both that the wife contributed nothing to the family income and that his expenses increased when she moved to Miami.
The order largely justifies the denial of apportionment of the wife's credit card debt based on the wife's incurring of these expenses while she was in Miami and *1202 on her using the credit cards without the husband's knowledge. However, the record evidence regarding the credit card debt shows that a significant portion of the debt was incurred prior to the parties' separation or after the wife had moved back into the marital home. In fact, during the six months the wife was in Miami, the balance on two of her three credit cards decreased or stayed about the same. Moreover, much of the credit card debt was incurred for the benefit of the parties' teenage daughter, including purchases of clothing and jewelry from department store "junior" departments.
It is undisputed that the wife obtained several credit cards without the husband's knowledge. Further, the order expressly finds that the wife's move to Miami was voluntary and she could have stayed in the marital home; these conclusions are supported by the evidence. However, these factors do not necessarily warrant treating all of the wife's credit card debt as nonmarital or as subject to unequal distribution.[1]See Walsh v. Walsh, 600 So.2d 1222 (Fla. 1st DCA 1992) ("[T]he fact that the expense was incurred by the wife independently does not preclude the liability from being considered a marital liability."); Deas v. Deas, 592 So.2d 1221 (Fla. 1st DCA 1992) ("The mere fact that the wife was unaware of the debts is insufficient to meet the burden of proof required to demonstrate that the debts were not marital liabilities."). Moreover, there is no support for the finding that the wife dissipated marital assets within the meaning of paragraph 61.075(1)(i), Florida Statutes, either through the use of her credit cards or the cashing in of her stock.
Because of the numerous unsupported findings regarding the credit card debt, this issue is to be reconsidered on remand. We note that the wife aptly points out that throughout the marriage the husband was the primary wage earner and the one upon whose income the family relied for payment of most (and at times all) of its expenses. This factor should be considered in apportioning the liabilities. Cf. Knecht v. Knecht, 629 So.2d 883, 886 (Fla. 3d DCA 1993) ("If during the pre-dissolution period the expenses are allocated equally, where one spouse has the ability to pay and the other does not, the net effect can be to invade the asset share of the low-income spouse.").

MORTGAGE PAYMENT CREDIT
The wife also contests the $2650.08 credit to the husband for the mortgage payments made during the parties' separation. However, although the order purports to award these credits, it appears that no such credits were actually given. These credits are not reflected in the equitable distribution, and the wording of the order reflects that these credits were to be used to offset the wife's request for attorney's fees and payment of credit card debt. The husband was not ordered to pay attorney's fees or credit card debt, and no offset was ever made.
In any event, we agree with the wife that the husband is not entitled to such credits, and no credits are to be awarded on remand. Although such credits are sometimes appropriate and the trial court is given latitude to award them in fashioning an equitable decree, here the husband paid the mortgage during the marriage anyway. Indeed, the husband conceded at oral argument that had the wife not moved out of the marital home, he would have made the mortgage payments, just as he had during the marriage. See Knecht v. Knecht, 629 So.2d 883 (Fla. 3d DCA 1993) (denying such credits where "the marital *1203 assets were acquired largely on the strength of the husband's income, which provided the cash flow to meet the mortgage payments and expenses").

ATTORNEY'S FEES
The wife also challenges the denial of her request for attorney's fees. Although the order erroneously refers to not wanting to "double charge" the husband for the same expenditure (due to the fact that the fees were charged on the credit card) and finds that the wife has no need for the husband to contribute to her fees, we affirm the denial of such an award due to the failure of the wife to present supporting evidence. The only evidence presented was the wife's testimony that she paid her attorney $1500 using a cash advance on a credit card. No evidence was presented regarding the number of hours expended by the wife's attorney, the rate charged, or the reasonableness of either. Accordingly, there is no record evidence to support a fee award, and the wife is not entitled to a second chance to present such proof. See Warner v. Warner, 692 So.2d 266, 268 (Fla. 5th DCA 1997) (without any evidence of hours or rate, "there is nothing to support an actual award" and "[t]he party failing to establish its attorney's fees claim is not entitled to a second opportunity to make the requisite showing.").

CONCLUSION
In closing, we note that many of the errors in the order likely could have been avoided if the court had made its own findings rather than adopting, in its entirety, the order proposed by the husband. This practice has been criticized by the courts of this state. See Hanson v. Hanson, 678 So.2d 522 (Fla. 5th DCA 1996); Waldman v. Waldman, 520 So.2d 87 (Fla. 3d DCA 1988) (condemning practice of adopting verbatim and without a hearing the order drafted by one party's counsel after requesting counsel for both parties to submit orders). Although certainly the submission of proposed orders frequently results in the entry of fair and accurate judgments, in this case by adopting the order with which it generally agreed, the court endorsed many findings which simply lack evidentiary support.
In sum, we reverse and remand for reconsideration of the issues of alimony, child support, and allocation of the credit card debt. No credits are to be awarded to the husband for the mortgage payments made during the separation. We affirm the dissolution of the marriage and the denial of attorney's fees.
REVERSED and REMANDED.
GOSHORN, J., and ORFINGER, M., Senior Judge, concur.
HARRIS, J., concurs, without participation at oral argument.
NOTES
[1] The dissolution order refers to each party's credit card debt as "individual" debt. This could be read as an indication that the debts are being treated as nonmarital; however, because the order lists the factors in section 61.075, Florida Statutes, regarding "equitable distribution of marital liabilities," apparently the order is treating the debt as marital but then ordering the wife to pay more than half of the total. Whether regarded as nonmarital debt or as marital debt subject to unequal distribution, the numerous errors in the order require reversal on this issue.