872 So.2d 299 (2004)
Robert W. CLEARY, Appellant/Cross-Appellee,
v.
Maria Tereza De Castelo Branco Ferreira CLEARY, a/k/a M. Tereza Cleary, Appellee/Cross-Appellant.
No. 2D02-3985.
District Court of Appeal of Florida, Second District.
April 14, 2004.
*301 Mary A. Swayze and Maury R. Olicker of Akerman Senterfitt, Miami, and Sarah Dennis of Akerman Senterfitt, Tampa, for Appellant/Cross-Appellee.
Arnold D. Levine and Robert H. Mackenzie of Levine, Hirsch, Segall, Mackenzie & Friedsam, P.A., Tampa, for Appellee/Cross-Appellant.
WALLACE, Judge.
Robert W. Cleary (the Husband) appeals the amended final judgment dissolving his marriage to M. Tereza Cleary (the Wife), asserting that the trial court abused its discretion in its equitable distribution of the parties' marital property and its determination of child custody, child support, alimony, and attorney's fees. On her cross-appeal, the Wife argues that the trial court erred by imputing future income to her as part of its determination of the amount of alimony awarded to her. We affirm the judgment in part and reverse in part. On remand, the trial court shall adjust the award of retroactive alimony and the plan of equitable distribution in a manner consistent with this opinion.

Child Custody
The Husband argues that the trial court erred in awarding primary residential responsibility for the parties' two children to the Wife because the evidence at trial demonstrated that the Wife is a less fit parent than the Husband. It is established law that a trial court has broad discretion in child custody matters. Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980). Despite a conflict in the evidence, a trial court's custody decision will not be disturbed unless there is no substantial, competent evidence to support that decision. Adair v. Adair, 720 So.2d 316, 317 (Fla. 4th DCA 1998).
The Husband has not met this burden. The record reflects that the trial court considered the best interests of the children as required under section 61.13, Florida Statutes (1997). Although there is a conflict in the evidence as to which party is the more fit parent, competent evidence supports the trial court's finding in favor of the Wife. Because the trial court's finding is supported by competent, substantial evidence, the trial court did not abuse its discretion in awarding primary residential responsibility for the children to the Wife. Therefore, we affirm the custody award.

The Equitable Distribution
In the final judgment of dissolution of marriage, the trial court found that the parties' 1996 and 1997 federal income tax overpayments were marital assets subject to equitable distribution and that these assets totaled $310,577. After concluding that the Husband received all of the benefit of these assets, the court ordered him to pay to the Wife the sum of $155,288.50 plus interest, an amount equal to one-half of the total overpayments. On appeal, the Husband argues that the trial court incorrectly calculated the total amount of the overpayments and that these were not assets subject to equitable distribution because they had been spent by the parties during the course of the marital litigation that spanned five years.
When a trial court makes an equitable distribution award, it must provide specific factual findings that identify and distinguish the marital assets from the non-marital assets. See § 61.075(3) (requiring *302 that "any distribution of marital assets or marital liabilities shall be supported by factual findings in the judgment or order based on competent substantial evidence"); see also Staton v. Staton, 710 So.2d 744 (Fla. 2d DCA 1998). However, before a trial court can make these determinations, it must establish a cut-off date, in accordance with section 61.075(6), for determining whether assets and liabilities should be classified as marital. See § 61.075(6) (stating that the cut-off date "is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage"). Moreover, a trial court must also select a valuation date for the marital assets pursuant to section 61.075(6), which provides that the date for determining the value of the marital assets "is the date or dates as the judge determines is just and equitable under the circumstances."
In the present case, the trial court did not select a cut-off date to determine which of the parties' assets should be classified as marital, nor did it select a valuation date for determining the value of the marital assets. Because the trial court did not establish these dates, this court is unable to review the trial court's determination that the federal income tax overpayments are marital assets or the value assigned to these assets. Nevertheless, we note that the Husband's argument that the trial court miscalculated the aggregate amount of the two income tax overpayments appears to have merit.
In reaching the conclusion that the federal income tax overpayments totaled $310,577, the trial court based its calculation on evidence submitted by the Wife that there was a 1996 income tax overpayment of $202,782 and a 1997 income tax overpayment of $107,795. However, this evidence overlooks the fact that a portion of the parties' overpayment for the 1996 tax year, to wit $139,720, was applied to the parties' 1997 income tax obligation. After considering the application of $139,720 to the parties' 1997 income tax obligation, the largest amount of the tax overpayments that could have been a marital asset was $180,843, comprised of a $65,118 cash refund from the 1996 overpayment, a $7930 cash refund from the 1997 overpayment, and the application of the remaining $107,795 of the 1997 overpayment to the Husband's 1998 income tax obligation.
The trial court's plan of equitable distribution also includes a surcharge to the Wife for her use of nonmarital assets. During the proceedings, she withdrew $68,000 from the Husband's corporate bank account. The trial court found that a portion of these monies, approximately $27,744, was used to pay the Wife's living expenses prior to the time she began to receive support from the Husband. Therefore, the trial court only surcharged the Wife the portion of the $68,000 she had not used for living expenses, to wit, $40,256. However, the Husband contends that this amount was a miscalculation of the amount the Wife was entitled to use as living expenses and that the Wife should have been surcharged $44,548.39.[1]
*303 Neither the record nor the trial court's final judgment offers a justification to support the trial court's calculation of the amount to surcharge the Wife. Instead, the record suggests that the Husband's mathematical calculations are correct. Because the trial court's conclusion is not supported by competent, substantial evidence, this portion of the equitable distribution is also flawed.
Therefore, we reverse the portion of the final judgment concerning the equitable distribution. On remand, pursuant to section 61.075(6), the trial court must establish a cut-off date for determining which assets should be classified as marital and must select a valuation date for determining the value of the marital assets. After making specific findings of fact and conclusions of law, the trial court must calculate the portions of the income tax overpayments that are marital assets and the portion of the marital assets to which the Wife is entitled. With regard to the amount of the surcharge to the Wife for her expenditure of nonmarital assets during the course of the dissolution proceedings, the trial court may adopt the Husband's calculations and surcharge the Wife the amount of $44,548.30. In the alternative, the trial court may recalculate the amount of the surcharge to the Wife and justify its determination of the surcharge amount with specific findings of fact in compliance with section 61.075(3). On remand, the trial court may take additional evidence on both of the above matters to make findings to support its determinations. After making the necessary findings, the trial court shall revisit the issue of the equitable distribution of the marital assets.

Retroactive Alimony
For the period from October 1997 through March 21, 2002, the date of the final judgment, the trial court awarded the Wife retroactive alimony in the sum of $67,392. The Husband asserts that the record does not support the trial court's finding that the Wife's need for support was in excess of the temporary alimony she received during the pendency of the proceedings. We disagree.
A trial court may award retroactive alimony when appropriate. See Askegard v. Askegard, 584 So.2d 47 (Fla. 1st DCA 1991); Wright v. Wright, 411 So.2d 1334 (Fla. 4th DCA 1982). When this type of alimony is granted to a party, an appellate court will not disturb the trial court's ruling absent an abuse of discretion. Canakaris, 382 So.2d at 1202-03. Finding no such abuse, we affirm the portion of the trial court's order awarding the Wife retroactive alimony.
Additionally, when the trial court awarded the Wife retroactive alimony, it also awarded her interest of $15,528.44 for the fifty-four months comprising the period of the retroactive alimony award. After giving the Husband credit for the $40,256 that the court determined should be surcharged to the Wife, the court concluded that the Husband was required to pay the Wife $42,664.44, plus per diem interest of $16.62, within thirty days from the entry of the final judgment. The Husband argues that the proper amount of interest the court should have awarded the Wife was $10,990.08 based on the figures the court determined for the retroactive alimony and the Wife's surcharge.[2]
*304 We agree that the trial court's calculation of the interest on the retroactive alimony is incorrect. Thus we reverse the portion of the final judgment determining the amount of interest the Husband is to pay the Wife on the retroactive alimony award. On remand, the trial court should recalculate this amount. In doing so, the trial court should take into consideration any adjustments it makes on remand to the amount that it surcharges the Wife for her use of nonmarital assets, as well as the fact that the Wife owed the entire amount of her surcharge for the entire pendency of the case, while the amount of retroactive alimony began at zero and increased monthly over the fifty-four-month period. Additionally, any interest the Husband owes should be based on the net amount of retroactive alimony he owes after being credited with the Wife's surcharge and not on the gross amount of retroactive alimony awarded.[3]

Alimony
In Canakaris, the Florida Supreme Court established the framework a trial court must use in awarding permanent alimony. "The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds." Canakaris, 382 So.2d at 1201. However, a trial court must be careful that "neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be `shortchanged.'" Id. at 1204. The Husband in the present case argues that he does not have the ability to pay the court-ordered payments, that if he is required to do so he will experience a net cash deficit, and that the amount of alimony he has been ordered to pay is not supported by the evidence. We disagree.
The evidence supports the trial court's conclusion that the Husband has the ability to pay the monthly alimony award. According to the Husband's certified public accountant, the Husband's lowest annual income during the seven years prior to the divorce was $299,548, his gross earnings for 2000.[4] Using the 2000 figure, the trial court determined that the Husband earned $24,692 each month before taxes and $19,641 after taxes. The court awarded the Wife $6331.33 monthly as permanent alimony and $2916.67 monthly as rehabilitative alimony for two years, or a total of $9248 monthly until the rehabilitative period expires. The Husband was also required to pay $1666 per month child support and an additional $825 per month for the children's private school tuition. After paying the total monthly alimony payment, child support, and private school tuition, the Husband still has $7902 to meet his monthly needs. Based upon the Husband's income, this is not a case in which the Husband will pass from comfort to poverty or from "prosperity to misfortune" by making the court-ordered alimony payments. Thus the trial court acted within its discretion in ordering the Husband to make alimony payments in the amount awarded to the Wife.

*305 Private School

Finding that both children have historically attended private schools, the trial court's final judgment ordered the Husband to pay all of the private school tuition for each child until that child reaches the age of majority.[5] Arguing that he should not have to bear these costs, the Husband cites Bell v. Bell, 811 So.2d 833 (Fla. 2d DCA 2002), in support. In that case, this court said:
A parent cannot be required to contribute to a child's private schooling expenses unless the trial court makes three factual findings: "(1) the parties have the ability to pay such expenses, (2) the expenses are in accordance with the customary standard of living of the parties, and (3) attendance at private school is in the child's best interest." Musser v. Watkins, 752 So.2d 141, 142 (Fla. 2d DCA 2000). There was no evidence adduced to support all three requirements for either child. Because the required evidence and findings were lacking, we strike the provision requiring the parties to pay for private school expenses for the children.
Id. at 834 (footnote omitted). However, the present case is distinguishable from Bell. Unlike the children in Bell, the children in this case attended private school prior to and throughout the entire dissolution proceedings. The Husband's average income in the years preceding the final hearing exceeded $300,000 annually. Therefore, his ability to pay the children's private school tuition was never in doubt. Moreover, the two children had always attended private school. Thus the private school expenses were consistent with the standard of living which the parties had established. Finally, both of the parties assumed throughout the dissolution proceedings that the children would continue to attend private school upon the dissolution of their marriage. The record reveals that all three of the Bell requirements have been met; therefore, we affirm the portion of the final judgment requiring the Husband to pay the children's private school tuition.

Attorney's Fees
The trial court's final judgment awarding the Wife attorney's fees is affirmed because the award is in compliance with section 61.16, Florida Statutes (1997).

The Oral Pronouncement
The Husband also argues that the final judgment should be reversed because the written judgment is materially different from the trial judge's oral pronouncement of her ruling. After carefully reviewing the trial judge's oral pronouncement of her ruling and the final written judgment, we have determined that, with one exception, there were no material differences. The only instance in which the trial judge's oral pronouncement differed from the final judgment is in the discussion of the amount of retroactive alimony to be awarded. During the course of her oral ruling, the trial judge set forth the elements to be used in calculating the retroactive alimony and announced the total amount of that award. Using the elements upon which the retroactive alimony award was based, there was an error in the trial judge's computation of the amount of the retroactive alimony award as announced in her oral ruling. In the final judgment that was entered subsequently, the trial judge corrected her mathematical error. This was entirely *306 appropriate. We find that this is not a material difference between the oral pronouncement and the final judgment that would warrant reversal as in Leonard v. Leonard, 613 So.2d 1339 (Fla. 3d DCA 1993), and Gallardo v. Gallardo, 593 So.2d 522 (Fla. 3d DCA 1991).

Cross-Appeal
The Wife contends that the trial court erred by imputing future income to her. In the section of the final judgment on the determination of alimony, the court said that it "imputed income that Mrs. Cleary could earn at the end of two years in the amount of $35,000.00 as her annual income." The amended final judgment further provided:
[I]ncome in the amount of $35,000 shall be imputed to the Wife at the end of the two year period whether or not she is, in fact, working. The imputation of income in the amount of $35,000 shall take effect at the end of the two year period set forth in the Final Judgment and the Husband's monthly alimony obligation to the Wife shall automatically be decreased at that time in the amount of $2,917 per month.
The Wife contends that the trial court erred by imputing income to her based on speculation about her future earnings.
In the case of Cushman v. Cushman, 585 So.2d 485, 486 (Fla. 2d DCA 1991) (citations omitted), this court summarized the principles of imputing income:
A court may impute income to a party who has no income or is earning less than is available to him based upon a showing that the party has the capability to earn more by the use of his best efforts. This determination of earning capacity versus actual earnings assumes the party to whom the income is imputed has chosen to earn less and has the ability to remedy the situation. Before imputing income, the court must determine whether the individual's underemployment resulted through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received. The court must consider not only recent work history but also occupational qualifications and prevailing earnings.
We think the trial court's reference to imputing income in the final judgment and the amended final judgment was either inadvertent or inexact. The statement occurs in the context of the award of rehabilitative alimony to the Wife and recognizes that such alimony will end at the conclusion of the rehabilitation period. Thus we conclude that the trial court did not impute income to the Wife but, instead, determined her ability to assist in her own support after a period of rehabilitation.
In the final judgment, the court awarded the Wife $9428 per month as permanent and rehabilitative alimony and stated: "The Court has determined that Mrs. Cleary could earn $35,000.00 annually starting two years from the date of entry hereof, accordingly, that portion of the $9,428.00 per month represented by the rehabilitative award, namely, $2,916.67, shall be paid by Mr. Cleary for a period of two years...." The Wife argues that the rehabilitative portion of the alimony award should be reversed for the entry of an award that includes only permanent alimony. In support, she asserts that the Husband presented no evidence that she could be rehabilitated. We disagree.
It is clearly established that the propriety of an award of rehabilitative alimony is within the scope of the trial court's broad discretion in dissolution proceedings. Canakaris, 382 So.2d at 1202. There is evidence in the record from which the trial court could have concluded that with some *307 training, the Wife could be rehabilitated so that she could partially support herself. At the time of the final hearing, the Wife was forty-four years old and in good health. She has a master's degree in hydrology. The trial court found that with some additional courses and retraining, the Wife could return to work in that field and contribute to her own support. Because the trial court's finding is supported by the evidence, the judgment including rehabilitative alimony for two years as part of the award was not an abuse of discretion. Thus the award of rehabilitative alimony is affirmed.
In all other respects, the final judgment is affirmed.
Affirmed in part, reversed in part, and remanded with directions.
CASANUEVA and SALCINES, JJ., concur.
NOTES
[1] The Husband acknowledges that $9000 of the $68,000 the Wife withdrew were marital assets, and therefore the amount of nonmarital assets totaled $59,000. Of the $59,000, the Husband argues that the Wife is only entitled to keep $14,451.61, resulting in a surcharge of $44,548.39 ($59,000-$14,451.61 = $44,548.39). The Husband derives the $14,451.61 figure by calculating the amount of temporary alimony at the court-ordered, prejudgment monthly rate of $8000 for the one month and twenty-five day period that preceded the commencement of the Husband's temporary alimony payments (i.e., $8000 × 1 month, 25 days = $14,451.61).
[2] If the court credited the Husband with the disputed $40,256 surcharge against the retroactive alimony of $67,392, the Husband still owed the Wife $27,136. The interest on $27,136 at nine percent per annum for fifty-four months is $10,990.08.
[3] Of course, there was no agreement between the parties addressing the issue of the rate of interest to be paid on any award of retroactive alimony. Therefore, pursuant to section 687.01, Florida Statutes (2002), the applicable rate of interest is the rate provided in section 55.03, Florida Statutes (2002).
[4] In 1997, the Husband began to report his income individually. In 1997, his reported gross income was $319,397; in 1998, it was $347,576; and in 1999, it was $400,239.
[5] In an amended final judgment, the trial court also ordered the Wife to pay the children's private school expenses that she had customarily paid including, but not limited to, books, uniforms, and school trips.