WALLACE, Judge.
 

 Harold Elliott Valentine (the Husband) appeals the final judgment that dissolved his marriage to Karen Lee Van Sickle (the Wife). On appeal, the Husband challenges the amount of the award of permanent periodic alimony, the award of retroactive alimony and retroactive child support, the classification of his personal injury settlement as a marital asset, and the equitable distribution of the marital assets. There is no cross-appeal. We affirm in part, reverse in part, and remand for further proceedings.
 

 I. INTRODUCTION
 

 The parties were married in 1989. They had one child, a daughter, who was born in 1998. The Husband worked as an underwriter in the mortgage banking industry, and his occupation required frequent travel. The Wife is a college graduate with a major in finance. She had an active real estate license and was employed in a salaried position in a real estate office.
 

 The parties separated in April 2006. The Husband filed a petition for dissolution of marriage in June 2007, and the final judgment of dissolution of marriage was entered on December 19, 2008. In the final judgment, the trial court ordered that the parties share parental responsibility for their minor daughter and directed that the child’s principal physical residence would be with the Wife. The trial court also awarded child support and permanent periodic alimony to the Wife and made these awards retroactive to June 2007, the month in which the petition for dissolution of marriage was filed.
 

 At trial, the parties disputed whether the proceeds of the Husband’s personal injury settlement were a marital or a non-marital asset. Thus, before proceeding with the equitable distribution of the parties’ assets, the trial court was required to classify the Husband’s personal injury settlement. The Husband had previously been injured when he drank a corrosive substance contained in a beverage purchased at a fast food restaurant. In July 2005, the Husband received a check for $130,729.38 representing the net proceeds from the settlement of his claim. The Wife received a separate amount of $1000 to settle her claim for loss of consortium. For reasons explained below, the trial court classified the proceeds of the Husband’s settlement as a marital asset. In addition to the classification of the Husband’s settlement, the equitable distribution issues that the trial court confronted were complicated by the parties’ dispute concerning the valuation of two parcels of
 
 *270
 
 real property and abundant evidence of the Husband’s extravagant spending.
 

 In the discussion that follows, we will first take up the issue of the award of permanent periodic alimony to the Wife. The discussion of this issue will require an examination of the evidence concerning the parties’ respective incomes. Second, we will briefly treat the related issue of the trial court’s decision to make the alimony and child support awards retroactive to the date of the filing of the petition for dissolution of marriage. Next, we will consider the trial court’s ruling that the proceeds of the Husband’s personal injury settlement were a marital asset. Finally, we will address the trial court’s valuation and equitable distribution of the marital assets.
 

 II. DISCUSSION
 

 A. Permanent Periodic Alimony Award
 

 The trial court ordered the Husband to pay the Wife permanent periodic alimony in the amount of $4000 per month. The Husband challenges the amount of the alimony award on various grounds. We begin our discussion of this issue by reviewing the evidence concerning the parties’ earnings.
 

 1. The Husband’s earnings
 

 When the parties separated in 2006, the Husband had worked for many years as a contract underwriter in the mortgage banking industry; i.e., he evaluated mortgage loans for their marketability in the secondary market. The Husband typically worked for various companies on temporary contracts. The demands of his work required him to be away from home for extended periods. Thus the Husband’s income fluctuated based on the demand for his services and his ability to travel. Because of his out-of-town travel, the Husband generally received a per diem payment for expenses in addition to his contract payments.
 

 The Husband earned approximately $83,400 in 2005 and approximately $86,800 in 2006. In 2007, the year he filed the petition for dissolution of marriage, the Husband became ill and was hospitalized, and he also underwent an elective surgery. As a result, the Husband was out of work for a significant part of 2007, resulting in a substantially reduced income for that year of approximately $24,000. On September 26, 2008, the first day of trial, the Husband submitted his fourth amended financial affidavit. In this affidavit, he claimed monthly earnings, averaged over nineteen months, of $5522, or $66,264 annually. The affidavit also reflected that the Husband received a $1000 monthly per diem. The Husband or his counsel erroneously entered the $1000 monthly per diem amount on the financial affidavit’s line for “[mjonthly reimbursed expenses and in-kind payments to the extent that they reduce personal living expenses.”
 

 In the first part of 2008, the consequences of the refinancing boom that occurred then as a result of historically low interest rates enabled the Husband to work an extraordinary amount of overtime. On some occasions, he worked as many as sixty hours of overtime in addition to forty hours of regular time during the same week. As a result, his income during this period was relatively high. During the first eight months of 2008, the Husband earned an average of $11,113 per month. Annualizing the $11,113 monthly amount produces a figure of $133,356, which is approximately $50,000 more than the Husband had earned historically.
 

 2. The Wife’s earnings
 

 When the parties separated, the Wife had been working for several years as an office manager for a real estate office.
 
 *271
 
 Her approximate annual income was $36,700 in 2005, $28,100 in 2006, and $23,800 in 2007. However, shortly before trial, the Wife filed an amended financial affidavit indicating that her salaried position had been terminated but that she continued working for her employer as a real estate sales associate on a commission-only basis. In her amended financial affidavit, the Wife asserted that her gross monthly income was $365.
 

 As previously noted, the Wife is a college graduate with a major in finance. She does not suffer from any physical or mental disabilities. The Wife worked during the marriage and contributed to the household income, albeit in a lesser amount than the Husband. The Wife had an active real estate license and was employed at a successful real estate office that is a franchisee of a nationwide organization. To support her claim of a sudden drastic decrease in income, the Wife offered in evidence at trial a letter from her employer dated June 25, 2008, and addressed “To Whom It May Concern.” The letter stated that the Wife had been laid off from her salaried position as of December 15, 2007, and that any income she had received after that date was commission income. The Husband objected to the letter as hearsay, but his objection was overruled, and the letter was received in evidence. Under the circumstances, the convenient conjunction of the Wife’s sudden layoff and the dissolution proceeding raised a question concerning whether the change in the Wife’s employment status and loss of income was voluntary.
 

 3. The trial court’s findings
 

 The trial was held on September 26, 2008. At trial, the Wife’s counsel stated that he calculated the Husband’s actual income in 2008 to be “$11,113 ... per month and then I added to that $1,000, which was the amount on his Financial Affidavit that he said he receives in per diem untaxed.” The Wife’s counsel apparently obtained the $11,113 figure by averaging the Husband’s gross year-to-date earnings as shown on his pay stub for September 4, 2008 (reflecting pay for the last week of August 2008). The Wife did not present any evidence controverting the Husband’s calculations of his nineteen-month average income. However, the trial court’s pronouncement made at the conclusion of the trial suggests that it was swayed by the Wife’s counsel’s arguments concerning the Husband’s 2008 income:
 

 As far as alimony to [the Wife], the Court will award $4,000 per month retroactive to the date of the filing of the alimony. In looking at [the Husband’s] Financial Affidavit, the Financial Affidavit that he filed with the Court, that shows a gross income of $6,522.
 

 However, the court considers that [the Husband] has made considerably] more money than in the year 2008. And we cannot predict, and this Court will not predict what will happen to the future of either [the Husband] or [the Wife’s] employment.
 

 We note that the trial court’s oral ruling on the alimony issue did not include findings concerning the factors listed in section 61.08(2), Florida Statutes (2006).
 

 The trial court’s written findings in the final judgment on the alimony issue were similarly limited. The findings concerning alimony — in their entirety — are as follows:
 

 5.
 
 ALIMONY:
 
 The Court finds that the Wife has a need and the Husband has the ability to contribute to the Wife’s support. The Court will award $4,000 per month permanent periodic alimony retroactive to the date of filing of the Petition for Dissolution of Marriage in June 2007. The Court finds that the statement of income on the
 
 *272
 
 Husband’s Financial Affidavit is inaccurate and he made considerably more money in 2008. The Court will not predict what will happen to the future of either the Husband’s or the Wife’s employment. The Court therefore finds that the alimony amount of $4,000 is reasonable and that the Wife is certainly in need of that amount of money. From the expenses on the Wife’s Financial Affidavit, which the Husband agreed were normal expenses, $4,000 per month is a reasonable sum[,] and the Court finds that the Husband has the ability to pay the $4,000 per month retroactive to the date of filing.
 

 Thus the trial court failed to make the requisite findings of fact either in its oral pronouncement or in the written final judgment.
 

 4. Analysis
 

 In accordance with section 61.08(1), a trial court is required to support its alimony determination by making specific findings of fact concerning the factors listed in section 61.08(2)(a)-(g).
 
 Austin v. Austin,
 
 12 So.3d 314, 317 (Fla. 2d DCA 2009) (citing
 
 Williams v. Williams,
 
 923 So.2d 606, 607 (Fla. 2d DCA 2006)). “The requirement that the final judgment contain specific findings of fact is to facilitate meaningful appellate review of the trial court’s award or denial of alimony.”
 
 Williams,
 
 923 So.2d at 607 (citing
 
 Milo v. Milo,
 
 718 So.2d 343, 344 (Fla. 2d DCA 1998)). The failure to make the required findings may constitute harmless error when appellate review is not hampered by their absence.
 
 Id.
 
 at 608. However, the trial court in this case has failed to make specific findings concerning the financial resources of the parties. § 61.08(2)(d). After a thorough review of the record, we conclude that the trial court’s omission to make the requisite findings of fact to support the substantial award of permanent periodic alimony in this case cannot be considered harmless. The trial court’s omission to make findings of fact — especially with regard to the financial resources of the parties — confounds meaningful appellate review of the alimony award for several reasons.
 

 First, the trial court does make a finding that the figures used in the Husband’s final financial affidavit were inaccurate, but it fails to explain how it came to this conclusion other than that he made “considerably more money” during the refinancing boom in the first part of 2008. Notably, the trial court fails to make a finding concerning the correct amount of the Husband’s monthly income. The trial court’s only finding concerning the Husband’s ability to pay is the finding that he “has the ability to pay the $4,000 per month retroactive to the date of filing.”
 

 To the extent that the trial court relied on the arguments of the Wife’s counsel concerning the Husband’s earnings during the first part of 2008 in considering his ability to pay, we note that the Husband’s pay stubs actually reflect a fluctuating income, consistent with the Husband’s description of his job as subject to the whims of the economy, the needs of the banks with which he had temporary contracts, and his ability to travel. As previously noted, the Husband’s earnings during the first part of 2008 were directly related to the refinancing boom resulting from historically low interest rates. Unquestionably, this surge in refinancing transactions was a temporary phenomenon. Nor is it reasonable to expect the Husband to continue to be able to work fourteen hours a day, seven days a week, simply to maintain a level of income that he has never made before. Accordingly, there was no competent, substantial evidence that the Husband’s income during the first part of 2008 would continue at
 
 *273
 
 that level. If the trial court relied on this inflated figure in considering the Husband’s ability to pay alimony, this would constitute an abuse of discretion.
 
 See Haas v. Haas,
 
 552 So.2d 221, 224 (Fla. 2d DCA 1989) (remanding for reconsideration of alimony because “we are concerned that the trial court may have imputed income based upon a party’s prior extraordinary efforts rather than upon the best efforts which reasonably should be expected over an extended time period”);
 
 Lauro v. Lauro,
 
 757 So.2d 523, 526 (Fla. 4th DCA 2000) (remanding for reconsideration of alimony where “there was no evidence that the husband’s income in 1997, which was substantially greater than his average income for the preceding three years, would continue”). Similarly, the Husband’s reduced income during 2007 was anomalous and could properly be disregarded by the trial court in determining his income. However, the trial court’s omission to make the requisite findings makes it impossible to determine what figure it did use for the Husband’s income in determining his ability to pay alimony.
 

 Second, it appears that the trial court may have improperly considered the Husband’s per diem reimbursements as part of his income in determining his ability to pay alimony. The per diem reimbursements should not be included in the Husband’s monthly income for the purpose of calculating his income unless the receipt of that money is shown to reduce personal living expenses.
 
 See Gurney v. Gurney,
 
 804 So.2d 601, 601 (Fla. 5th DCA 2002). As previously noted, the Husband erroneously included his per diem reimbursements on a line in his financial affidavit that is reserved for reimbursed expenses
 
 “to the extent that they reduce personal living expenses.”
 
 Undeniably, this was the Husband’s mistake. However, the issue was raised and discussed during the trial, and any questions on this score were resolved by the parties’ testimony. In fact, both the Husband and the Wife testified that these funds were used to pay for the Husband’s travel expenses; no evidence'to the contrary was presented. Because the trial court made no findings with regard to the Husband’s income, we do not know if the trial court considered the Husband’s per diem reimbursements in determining his income.
 
 [1]
 

 Third, the trial court failed to resolve the substantial question concerning the amount of the Wife’s actual income. The Wife’s amended financial affidavit, filed shortly before trial, asserted that her net income was approximately $197 per month. The affidavit reflected a deficit of $4058. The Husband did not challenge the Wife’s claimed expenses. The trial court’s alimony award apparently took the Wife’s claimed shortfall of $4058 as a given, did not question her sudden decrease in earnings, and based the alimony award on these figures.
 

 However, the trial court imputed a monthly income of $2000 per month to the Wife for the purpose of computing child support. In addition, it adopted the Wife’s child support guidelines worksheet, which assumed a gross monthly income for the Husband of $6505. Thus the trial court used one set of earnings figures for the purpose of calculating child support and apparently used a substantially different set for the purpose of calculating the ali
 
 *274
 
 mony award.
 
 [2]
 

 The Wife did not present any evidence that she could not obtain a position that paid approximately the same amount that the evidence showed she had regularly earned. On remand, the trial court must determine whether the Wife’s sudden change in employment status was voluntary and whether the Wife is capable of earning the same income as she had in prior years. If so, the trial court must impute an appropriate amount of income to the Wife for the purpose of determining the amount of the alimony award.
 
 See Gildea v. Gildea,
 
 593 So.2d 1212, 1213 (Fla. 2d DCA 1992).
 

 Finally, we note that in closing argument the Wife’s counsel offered alternative scenarios establishing the monthly alimony award at $5000, $4000, and $3000.
 
 [3]
 
 However, the permanent monthly alimony award the Wife requested in her pretrial conference memorandum was only $2000. The final judgment does not explain why the trial court decided to award the Wife twice the amount of alimony that she had originally requested.
 
 See Wenzel v. Wenzel,
 
 512 So.2d 275, 276 (Fla. 4th DCA 1987) (“[Cjonsidering the wife’s ability to contribute towards her own support, and the fact that the wife requested temporary alimony in an amount less than the award, it was an abuse of discretion for the trial court to award the wife $4,000 per month as temporary alimony.”).
 

 For these reasons, we reverse the award of permanent periodic alimony and remand for the trial court to enter an amended final judgment. On remand, the trial court shall make specific findings concerning the statutory factors set forth in section 61.08(2)(a)-(g).
 

 B. Retroactive Alimony and Retroactive Child Support
 

 The trial court awarded the Wife retroactive alimony in the amount of $4000 per month and retroactive child support in the amount of $664 per month for the period from the filing of the petition for dissolution of marriage (June 2007) to the entry of the final judgment (December 2008)— approximately eighteen months. The trial court gave the Husband twenty-four months to pay the retroactive alimony award of approximately $72,000. The trial court ordered that an additional ten percent per month be added to the child support obligation to pay the retroactive child support amount.
 

 “A trial court may award retroactive alimony when appropriate,”
 
 Cleary v. Cleary,
 
 872 So.2d 299, 303 (Fla. 2d DCA 2004), but an award of retroactive alimony must be based on the receiving spouse’s need for alimony and the paying spouse’s ability to pay,
 
 Alpert v. Alpert,
 
 886 So.2d 999, 1002 (Fla. 2d DCA 2004). Here, as with the permanent periodic alimony award, the trial court made no findings concerning the parties’ incomes during the relevant eighteen-month period as required by section 61.08, nor did it make any specific findings supporting its conclusion that the Husband had the ability to pay.
 
 See Alpert,
 
 886 So.2d at 1002. In addition, no evidence was presented contradicting the Husband’s reported 2007 gross income of about $24,000.
 

 The Husband also argues that he should receive a credit against the retroactive alimony for the mortgage payments he made on the marital home dur
 
 *275
 
 ing the period of the parties’ separation. We disagree. Prior to the final judgment of dissolution, the marital residence was held as a tenancy by the entireties. “In such an estate, both parties are obligated for the whole of any expenses or debt on the property (including mortgage payments and insurance).”
 
 Taber v. Taber,
 
 626 So.2d 1089, 1090 (Fla. 1st DCA 1993). Thus,
 

 [t]he party seeking to show a special interest as a result of contributions has the burden of proof to demonstrate that such a payment was from nonmarital funds or as a result of special efforts, and did not constitute payment of marital expenses. Any expenditures made during the marriage are presumed to be in furtherance of the marriage, and the burden of proof would be on the party seeking to show that some special credit should be given for these payments made during the marriage.
 

 Id.
 
 (citations omitted).
 

 We also note that the Husband conceded at trial that he would have continued to make the mortgage payments, just as he had before the separation, regardless of whether the Wife continued to reside in the marital home.
 
 See Kranz v. Kranz,
 
 737 So.2d 1198, 1202-03 (Fla. 5th DCA 1999) (holding that the husband was not entitled to a credit for mortgage payments made during the parties’ separation).
 
 See also Knecht v. Knecht,
 
 629 So.2d 883, 888 (Fla. 3d DCA 1993) (reversing credit to husband for mortgage payments made during the period between separation and dissolution because “the marital assets were acquired largely on the strength of the husband’s income, which provided the cash flow to meet the mortgage payments and expenses”). Accordingly, we cannot conclude that the trial court abused its substantial discretion in denying the Husband’s request for such credit.
 
 See Stock v. Stock,
 
 693 So.2d 1080, 1086 (Fla. 2d DCA 1997) (“Reimbursement or credit for a party’s payment of marital property-related expenses during separation is a matter of judicial discretion in light of all relevant circumstances.”).
 

 On the other hand, we observe that during the period from the parties’ separation through the trial, the Wife withdrew approximately $35,000 from the proceeds of the Husband’s personal injury settlement for the support of the household. If, on remand, it is determined that these funds are nonmarital assets,
 
 [4]
 
 the Husband should receive a setoff against these withdrawals for the relevant period. If these funds are determined to be marital assets, the trial court must determine whether the Husband is due a partial setoff based on his share of those assets.
 
 See Welch v. Douglas-Welch,
 
 800 So.2d 630, 630 (Fla. 2d DCA 2001).
 

 We reverse the awards of retroactive alimony and retroactive child support. On remand, the trial court shall revisit these issues. If the trial court again determines that retroactive alimony, retroactive child support, or both of them are appropriate, such determination shall be supported by specific findings concerning the sources and amounts of the parties’ respective incomes during the period from the date of the separation to the entry of the final judgment of dissolution of marriage.
 

 C. The Husband’s Personal Injury Settlement
 

 The Husband challenges the trial court’s decision to classify the proceeds of his
 
 *276
 
 personal injury settlement as a marital asset. In 2005, the Husband received a check for $130,729.38 representing the net proceeds of the settlement of his claim for the injuries he sustained when he drank a corrosive substance contained in a beverage purchased from a fast-food restaurant. When the settlement check was received, the Husband was on assignment in Chicago, Illinois. The Wife opened an account for the money on behalf of the Husband in his absence, and she established the account as a joint account.
 

 By early 2007, the amount of money in the account had been reduced to about $95,000. The parties agree that the majority of withdrawals from this account were made by the Husband. The money was also used for some marital expenses, such as paying off an auto loan. The Wife testified that there came a point in time when she became concerned that the Husband intended to squander the entire amount. In addition, he had allegedly threatened to cut off funds for the support of the Wife and the child.
 
 [5]
 
 To protect the money in the account from further dissipation and to ensure she would have funds to support the household, the Wife transferred all of the funds in the account to a different account in her name only on March 8, 2007.
 

 The trial court’s findings concerning the classification of the lawsuit settlement proceeds as a nonmarital or marital asset are as follows:
 

 8.
 
 LAWSUIT PROCEEDS:
 
 The parties had been utilizing the funds from a settlement of $130,729.38 that the Husband received from a lawsuit in July 2005. Those funds were then transferred to a joint account, which funds were utilized to pay for two vehicles.... The funds were also utilized to pay for marital debt and pay off an American Express bill. Therefore the funds will be utilized and considered by the Court as marital assets.
 

 Thus, for the trial court, the determinative factors relative to the classification of the Husband’s lawsuit were the deposit of the funds into a joint account and the Husband’s use of the funds to pay marital debts and expenses.
 

 We conclude that the trial court used an incorrect legal standard in deciding to classify the proceeds of the Husband’s personal injury settlement as a marital asset. Section 61.075(5)(b)(2) provides that nonmarital assets may include “[ajssets acquired separately by either party by noninterspousal gift, bequest, devise, or descent, and assets acquired in exchange for such assets.” Thus the Husband’s personal injury settlement qualified as a nonmarital asset upon its receipt.
 
 See Mazzorana v. Mazzorana,
 
 703 So.2d 1187, 1189 (Fla. 3d DCA 1997) (treating the wife’s personal injury award as a nonmari-tal asset);
 
 cf. Sevor v. Sevor,
 
 627 So.2d 609, 610 (Fla. 5th DCA 1993) (directing trial court to revisit the issue of whether the wife would be entitled to some portion of the husband’s personal injury settlement for loss of consortium).
 
 [6]
 

 As to the titling of the account in joint ownership, we find
 
 Grieco v. Grieco,
 
 917 So.2d 1052 (Fla. 2d DCA 2006), a case involving the husband’s receipt of funds from an inheritance, to be instructive. In that case, this court held that even though the wife’s name was on the account, this was not necessarily determinative of
 
 *277
 
 whether the funds were marital. “This is particularly so when the Husband placed the Wife’s name on the account solely for convenience.”
 
 Grieco,
 
 917 So.2d at 1054. Here, the facts favor the Husband more strongly than the facts in
 
 Grieeo.
 
 He was out of town, on business, when the check was received. In addition, the Husband’s occupation necessitated almost constant travel, requiring him to rely on the Wife for the management of his financial affairs.
 

 The trial court also relied on the Husband’s use of the funds to pay marital debts and expenses in support of its ruling. However, the Husband’s decision to use some of his nonmarital assets to benefit the family does not transform the asset into a marital asset.
 
 See id.
 
 at 1054-55 (citing
 
 Lakin v. Lakin,
 
 901 So.2d 186, 191 (Fla. 4th DCA 2005)). “At most, only the portion of funds the [w]ife withdrew for marital use lost their nonmarital character.”
 
 Id.
 
 at 1055 (citing
 
 Pinder v. Pinder,
 
 750 So.2d 651, 658 (Fla. 2d DCA 1999)).
 

 On appeal, the Wife claims for the first time that the account lost its nonmarital character when two substantial deposits of marital funds were made into the account.
 
 See Pfrengle v. Pfrengle,
 
 976 So.2d 1134, 1136 (Fla. 2d DCA 2008);
 
 Steiner v. Steiner,
 
 746 So.2d 1149, 1150 (Fla. 2d DCA 1999);
 
 Becker v. Becker,
 
 639 So.2d 1082, 1084 (Fla. 5th DCA 1994). In response, the Husband argues that the nonmarital funds were never commingled with marital funds. Unfortunately, the trial court failed to make any findings of fact on this critical factor. In the absence of findings of fact on the commingling issue and the trial court’s reliance on inappropriate factors in reaching its decision that the proceeds of the Husband’s personal injury settlement were a marital asset, we reverse the trial court’s ruling and remand for the trial court to revisit this issue. On remand, the trial court may take such additional evidence as may be necessary to resolve the status of the proceeds of the Husband’s personal injury settlement as a nonmarital or a marital asset.
 

 D. The Equitable Distribution of Marital Assets
 

 1. Introduction
 

 The Husband also challenges the trial court’s valuation and distribution of the marital assets. An overriding factor in this case — and an evident consideration in the trial court’s final judgment — was the Husband’s depletion of the marital estate after the parties separated. In particular, the Husband maximized the home equity line of credit (the HELOC) against the equity in the parties’ marital home. When the parties separated, the marital home was subject to a first mortgage in the approximate amount of $116,000 and the HELOC in the approximate amount of $46,000. Assuming that the home was worth approximately $400,000
 
 [7]
 
 when the parties separated, they had an equity interest in the home amounting to about $240,000. After the separation, the Husband began obtaining money by repeated withdrawals from the HELOC. The Husband’s withdrawals from the HELOC did not stop until he had reached the maximum loan amount of $225,000, wiping out virtually all of the equity in the marital home.
 

 On appeal, the Husband raises several issues concerning the trial court’s equitable distribution of the marital assets. Other than the possibility that the equitable distribution may need to be adjusted to reflect the proper classification of the proceeds of the Husband’s personal injury settlement, we find only one aspect of the
 
 *278
 
 equitable distribution that must be corrected on remand. We will briefly address the Husband’s arguments concerning the equitable distribution.
 

 2. The treatment of the HELOC
 

 The Husband argues that the trial court erred when it designated as an asset the money he obtained from the HELOC on the marital home. This demonstrates a misunderstanding of basic accounting. The money that the Husband has in his possession is and must be shown as an asset. The amount that he owes the bank, which may very well be the same amount of money, is a liability. The balance sheet used by the trial court reflects both the funds currently in a bank account as well as a corresponding debit representing the amount outstanding on the loan. Thus the trial court’s handling of the HELOC was proper. The trial court allocated the parties’ former marital home to the Husband along with the corresponding debt. We affirm this approach to the equitable distribution of the parties’ marital assets.
 

 3. Valuation of the marital home
 

 The Husband testified that the marital home was worth approximately $240,000 at the time of trial. The Wife testified that the home was worth $411,000. The Wife entered into evidence the sales histories of several comparable properties that she had compiled herself to arrive at her estimate of value. Neither party offered the testimony of an independent appraiser concerning the home’s true market value. The trial court accepted the Wife’s valuation.
 

 The parties were competent to testify concerning the value of the marital home in which they each had an ownership interest.
 
 See Beaty v. Gribble,
 
 652 So.2d 1156, 1158 (Fla. 2d DCA 1995) (citing
 
 Harbond, Inc. v. Anderson,
 
 134 So.2d 816 (Fla. 2d DCA 1961)). However, parties to dissolution of marriage actions who fail to present expert witness evidence and rely instead on their own testimony to resolve disputed issues concerning the value of marital assets take a calculated risk. ‘When the parties fail to present evidence other than their personal opinions as to value, a trial judge ordinarily must choose between those values.”
 
 Tucker v. Tucker,
 
 966 So.2d 25, 29 (Fla. 2d DCA 2007) (Altenbernd, J., concurring). Here, in the absence of any expert opinion testimony concerning value, the trial court chose to accept the Wife’s valuation instead of the Husband’s. Under the circumstances, we find no error.
 

 4.Valuation of the Clearwater condominium
 

 The Husband testified that his condominium located in Clearwater had a value “in the neighborhood of [$]60,000 to [$]65,000.” The Wife offered no evidence concerning the value of the Clearwater condominium. Nevertheless, the trial court valued this asset at $83,000, a figure suggested by the Wife’s counsel. This constituted error. On remand, the trial court must revalue the Clearwater condominium in accordance with the evidence and adjust the equitable distribution accordingly.
 

 III. CONCLUSION
 

 For the foregoing reasons, we reverse the classification of the Husband’s personal injury settlement as a marital asset. We also reverse the awards of alimony, retroactive alimony, and retroactive child support. We remand for further proceedings on these issues. In addition, we reverse the trial court’s valuation of the Clearwater condominium. With the exception of that valuation issue and except to the extent that the equitable distribution
 
 *279
 
 may need to be adjusted based on the proper classification of the proceeds of the Husband’s personal injury settlement as a nonmarital or a marital asset, we affirm the trial court’s equitable distribution of the marital assets. In all other respects, the final judgment of dissolution of marriage is affirmed.
 

 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
 

 LaROSE and CRENSHAW, JJ., Concur.
 

 [1]
 

 . In a response to the Husband’s motion for rehearing or reconsideration, the Wife asserted that the evidence at the trial showed, and the Husband admitted, "that he was making an average of over $11,000 per month plus an additional $1,000 per month per diem check in 2008.”
 

 [2]
 

 . We note that the Husband does not challenge the amount of the child support award.
 

 [3]
 

 . In response, the Husband’s counsel argued that a monthly alimony award of $1500 or $2000 would be "a more reasonable number.”
 

 [4]
 

 . In section 11(C) of this opinion, we hold that the trial court used an incorrect legal standard in determining that the proceeds of the Husband’s personal injury settlement were marital assets and remand for further proceedings on this issue.
 

 [5]
 

 . During this period, the Husband had also been taking out large sums of money from the home equity line of credit on the marital home.
 

 [6]
 

 . The issue addressed in
 
 Sevor
 
 is not a problem in this case. Here, the Wife received a separate settlement for her loss of consortium claim.
 

 [7]
 

 . The Husband originally valued the home at $385,000; the Wife at $411,000.