NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ANTONIO SORIA,                          )
                                        )
            Appellant,                  )
                                        )
v.                                      )       Case No. 2D17-1566
                                        )
LUCINDA L. SORIA,                       )
                                        )
            Appellee.                   )
_____ )

Opinion filed February 7, 2018.

Appeal from the Circuit Court for Pasco
County; Kemba Lewis, Judge.

Theodore J. Rechel of Rechel &
Associates, P.A., Tampa, for Appellant.

Lucinda L. Soria, pro se.


BLACK, Judge.

Antonio Soria (the former husband) challenges the final judgment

dissolving his marriage to Lucinda Soria (the former wife).  He contends that the court

made several errors with regard to the valuation of his company for purposes of

equitable distribution and made several errors with regard to the awards of permanent

periodic alimony and retroactive alimony.  For the reasons set forth in this opinion, we

affirm the dissolution of marriage but reverse those portions of the final judgment related to equitable distribution and alimony and remand for further proceedings.

***Equitable distribution***

The parties were married in April 1988.[1] The former husband filed a petition for dissolution of marriage in June 2014, and the former wife filed a counter-petition several months later. The trial was held on November 28, 2016, December 19, 2016, and January 23, 2017. The former husband testified that he founded Advanced Biomedical Concepts, LLC (ABC), in 2012 for the purpose of consulting with doctors to assist them in bringing their ideas to market. The former husband created ABC by purchasing the wound care product division of Medical GMBH, which had previously employed the former husband. As a result of that purchase—which included technology and equipment—ABC remained indebted to Medical GMBH in an amount in excess of $400,000. The balance of the purchase price was to be paid in three installments between July 2013 and July 2015, but ABC had been unable to fulfill this obligation due to money shortages and other issues that had arisen. ABC's profit and loss statements and balance sheets from 2013 to 2016 were admitted into evidence; the 2016 financial statements were up to date through September 2016 with projections through the end of December 2016. ABC's assets varied between $147,000 and $190,000, and liabilities varied between $9000 and $76,000. The former husband testified that ABC was in "start-up mode" and that, based on his knowledge of the business, it had no actual

---

[1]The record is conflicting with regard to whether the parties were married in April 1988 or April 1989. The final judgment states that the parties were married in 1988, and neither party has disputed that finding.

- 2 -

value.  The former husband further explained that he is a crucial part of any value that the business may have and that the business could not function without him.

At the time the petition for dissolution was filed, the former husband owned approximately 64 percent of ABC, equating to 674,000 shares.  The remaining 36 percent of the company was owned by investors, and the former husband explained that each investor's ownership interest in ABC was based upon the amount of his or her investment, with $1 equating to one share.  After the petition for dissolution was filed and in contravention of the trial court's order prohibiting either party from disposing of or dissipating the value of any asset, the former husband transferred 30,000 of his shares of ABC stock to his girlfriend, who is an engineer, as compensation for the "time and energy" she invested "to keep the company alive."

During closing argument, the former wife asserted that the value of ABC should be determined by the manner in which the former husband sought capitalization—one unit or share of ownership for each dollar invested.  The trial court seemingly agreed.  In the final judgment, the trial court found that the former husband owns 674,000 shares of ABC stock, including the 30,000 shares he "improperly transferred" to his girlfriend.  The court found that those shares have a total value of $674,000 "based on the [former] [h]usband's testimony of how each share was acquired through the investment process."  The court concluded that the former wife is entitled to 50 percent of the value of the former husband's ownership interest in ABC, or $337,000.  The former husband does not dispute that his ownership interest in ABC is a marital asset subject to equitable distribution but contends that the court erred by using the "par value" of the stock as a means of assessing the value of this asset.  See Par Value,

- 3 -

Black's Law Dictionary 1298 (10th ed. 2014) (defining "par value" as "[t]he value of an instrument or security as shown on its face; esp., the arbitrary dollar amount assigned to a stock share by the corporate charter").

"We review the trial court's equitable distribution decisions for abuse of discretion and examine its valuation of marital assets to determine whether it is supported by competent, substantial evidence." Dravis v. Dravis, 170 So. 3d 849, 853 (Fla. 2d DCA 2015) (citing Tradler v. Tradler, 100 So. 3d 735, 738 (Fla. 2d DCA 2012)); see also § 61.075(3), Fla. Stat. (2016) ("[A]ny distribution of marital assets or marital liabilities shall be supported by factual findings in the judgment or order based on competent substantial evidence . . . ."). "Proper valuations of assets are critical to the propriety of an equitable distribution scheme." Hough v. Hough, 793 So. 2d 57, 59 (Fla. 2d DCA 2001) (citing Cornette v. Cornette, 704 So. 2d 667, 668-69 (Fla. 2d DCA 1997)). "The valuation of a business is calculated by determining the fair market value of the business, which is the amount [for which] a willing buyer and a willing seller would exchange assets[,] absent duress." Christians v. Christians, 732 So. 2d 47, 47 (Fla. 4th DCA 1999). "Typically, fair market value measures the value of the assets of the business plus the value of goodwill." Id. at 47-48.

> Enterprise goodwill, defined as the value of a business "which exceeds its tangible assets" and represents "the tendency of clients/patients to return to and recommend the practice irrespective of the reputation of the individual practitioner," is a marital asset subject to equitable distribution. Thompson v. Thompson, 576 So. 2d 267, 269 (Fla. 1991). Personal or professional goodwill attributable to the skill, reputation, and continued participation of an individual is *not* a marital asset.

Schmidt v. Schmidt, 120 So. 3d 31, 33 (Fla. 4th DCA 2013). Though neither party presented expert witness testimony as to the value of ABC,[2] the owner of a business may testify as to its value. See Capote v. Capote, 117 So. 3d 1153, 1155 (Fla. 2d DCA 2013) (citing Beaty v. Gribble, 652 So. 2d 1156, 1158 (Fla. 2d DCA 1995)).

Here the essentially arbitrary par value assigned to ABC's stock bears no relation to ABC's fair market value. The court did not specify the date on which it valued the former husband's ownership interested in ABC.[3] See Schroll v. Schroll, 227 So. 3d 232, 235 (Fla. 1st DCA 2017) ("The date for determining the value of marital assets and the amount of marital liabilities is the date or dates as the court determines is 'just and equitable under the circumstances.' " (quoting § 61.075(7))). However, no matter which date the court found to be "just and equitable," the court was required to consider both ABC's assets and liabilities when assessing its value. See Bair v. Bair, 214 So. 3d 750, 754 (Fla. 2d DCA 2017). Thus not only did the court err in valuing ABC based on the capitalization scheme, the court further erred in failing to include the company's liabilities. In addition to the liabilities listed on the balance sheet, the former husband testified that ABC still owes Medical GMBH over $400,000. And though the court made no findings with regard to goodwill, the former husband testified that he is the business

---

[2]At the start of trial, the former wife requested that the court order a valuation of ABC. She acknowledged that the former husband had been forthcoming with ABC's financial documents but indicated that she did not have the time or the funds to have a business valuation completed prior to trial; the former wife had already been granted a continuance in order to obtain additional financial information related to ABC. The former husband objected, and the court took the matter under advisement but never explicitly ruled on the request.

[3]Since the trial court included the 30,000 shares of ABC stock transferred to the former husband's girlfriend in the equitable distribution, the court presumably chose a valuation date after the transfer had occurred.

and that the business could not function without him.  See Thompson v. Thompson, 576 So. 2d 267, 270 (Fla. 1991) ("[G]oodwill, to be a marital asset, must exist separate and apart from the reputation or continued presence of the marital litigant."); accord Shaver v. Shaver, 203 So. 3d 932, 937 (Fla. 2d DCA 2016).

Furthermore, as to the former husband's ownership interest in ABC specifically, the court failed to take into account the fact that its value had dissipated because the former husband had been taking loans against his stock in ABC since 2013 to pay living expenses.  Cf. Bush v. Bush, 824 So. 2d 293, 294 (Fla. 4th DCA 2002) (reversing award of dissipated asset when the evidence showed that the husband exercised his stock options to pay the parties' financial obligations during the dissolution proceedings).  The first three promissory notes in the amount of $50,000 each were admitted into evidence; the final promissory note, representing his loans through the end of 2016, had not yet been issued at the time of trial.  The 2016 balance sheet indicates that his capital account was projected to be in the negative by over $190,000. This is consistent with his testimony that he expected to owe ABC close to $200,000 by the end of 2016.  The date of the valuation will of course dictate the amount by which this asset has been dissipated.

The former husband also argues that the court erred in finding that he had improperly transferred 30,000 shares of his ABC stock to his girlfriend during the dissolution proceedings.  "This court has held that it is error to include assets in an equitable distribution scheme that have been diminished or dissipated during the dissolution proceedings unless there has been misconduct during the proceedings that results in the dissipation."  Bair, 214 So. 3d at 758.  "[T]o justify inclusion of a dissipated

- 6 -

asset in the equitable distribution . . . . the evidence must show 'the spending spouse's intentional dissipation or destruction of the asset.' " Tradler, 100 So. 3d at 740 (quoting Roth v. Roth, 973 So. 2d 580, 585 (Fla. 2d DCA 2008)). "Without evidence and a specific finding of misconduct, the trial court abuses its discretion in including a dissipated asset in the equitable distribution scheme." Id. at 740-41.

The former husband's unrefuted testimony was that the transfer of shares was made to his girlfriend as compensation for work she performed for ABC's benefit. Though the former husband conceded that only his shares of stock were depleted as a result of the transfer rather than a proportionate number of shares from all of the shareholders, we do not believe his actions constitute misconduct. According to the former husband, the girlfriend's efforts served the purpose of "keeping the company alive" and as such served to benefit a marital asset. Cf. Lopez v. Lopez, 135 So. 3d 326, 329 (Fla. 5th DCA 2013) (concluding that the trial court did not err in allocating to the former husband depleted funds which were spent on his girlfriend).

On remand the trial court shall set a valuation date for ABC that is "just and equitable" and then determine the fair market value of ABC based on the evidence and testimony presented at trial, taking into account all of the company's assets and liabilities. Based on the revised valuation of ABC, the trial court shall reconsider the remainder of the equitable distribution as necessary.

*Alimony*

The former husband's remaining arguments on appeal concern the awards of permanent periodic alimony and retroactive alimony. The former husband contends that the trial court failed to make the requisite factual findings in support of the

awards and that the awards are otherwise not supported by competent substantial evidence. "The trial court's award of alimony is subject to an abuse of discretion standard of review, and where the record does not contain substantial, competent evidence to support the trial court's findings regarding the amount of alimony awarded, the appellate court will reverse the award." Wabeke v. Wabeke, 31 So. 3d 793, 795 (Fla. 2d DCA 2009) (quoting Farley v. Farley, 858 So. 2d 1170, 1172 (Fla. 2d DCA 2003)).

In a long-term marriage such as the one in this case, "there is an initial presumption in favor of an award of permanent alimony." See Austin v. Austin, 12 So. 3d 314, 317 (Fla. 2d DCA 2009). Specific findings of fact must be included in the final judgment to support the trial court's alimony determination, and the primary factors to be considered in making such a determination are the financial needs of one party and the ability of the other party to pay. Id. "The ability to pay alimony must be based on the party's net income." Conlin v. Conlin, 212 So. 3d 487, 488 (Fla. 2d DCA 2017); accord Hanson v. Hanson, 217 So. 3d 1165, 1166 (Fla. 2d DCA 2017) ("The judgment is also deficient for failing to look to the parties' *net* incomes in assessing need and ability to pay." (quoting Badgley v. Sanchez, 165 So. 3d 742, 744 (Fla. 4th DCA 2015))).

The former wife is disabled and "has reached her maximum earning potential"; the trial court found that the former wife's income consists solely of her social security disability benefits in the gross amount of $975.90 per month. The court further found that the former husband is capable of earning $7927 per month based on the fact that during the course of the fourteen-month litigation, $110,980 was deposited into his checking account from ABC. Based on those findings, the court concluded that the

former wife has a need for alimony and the former husband has the ability to pay alimony. The court ordered the former husband to pay the former wife $2500 per month in permanent alimony. While the court did make some findings regarding the financial resources of the parties, those findings are not supported by competent substantial evidence. Further, the permanent alimony award was apparently based on gross rather than net incomes, and it appears that the court failed to take into account the parties' monthly expenses.

The former wife testified that she receives $1014 per month from social security. In addition, she testified that she also receives $459 every two weeks for workers' compensation. The only change to her income since she filed her financial affidavit in June 2016 is that she now receives approximately $75 more per month for workers' compensation. Based on these figures, the former wife's gross monthly income is actually $2008.50, significantly more than identified by the court. According to her financial affidavit, the former wife's monthly expenses total almost $4500.

The former husband testified that his "monthly income [from ABC] is around $2960." His most recent financial affidavit, which was admitted into evidence, indicates that his gross monthly income is $2916. Because his monthly expenses greatly exceed his monthly income, he finances his monthly deficit by taking loans against his ABC stock as evinced by promissory notes discussed previously with regard to the equitable distribution. The former husband admitted into evidence a letter dated September 4, 2015, signed by Dr. Bernard Kasten, chairman of the board, which provides as follows:

> This is concerning the source of income for Antonio B. Soria
> for 2013, 2014 and 2015. There was a minimal net income

> from Advanced Biomedical Concepts LLC to Antonio B.
> Soria in 2014 for 2500.00 per month. The company gives
> loans to Antonio B. Soria based on outside investment to
> supplement his income while the company is in start up
> phase.

Attached to the letter were copies of three checks in the amount of $2500 made out to the former husband. Though only these three checks were admitted into evidence, the former husband testified that "[e]very time there's 2500 that goes into [his] account, it's a loan." The former husband explained that he receives around $7000 per month from ABC, with approximately $3000 representing his actual salary and the remaining amount, varying between $3000 and $5000 per month, representing the loans he takes from ABC to cover his monthly deficit of approximately $5000. The total amount received by the former husband from ABC in the fourteen months leading up to the trial was $110,980, or $7927 per month.

Based on the court's finding that the former husband is capable of earning $7927, it appears that the trial court imputed this amount in income to the former husband. "A court may impute income if a party is earning less than he could, based on a showing that he has the capability of earning more by the use of his best efforts." Alpert v. Alpert, 886 So. 2d 999, 1001 (Fla. 2d DCA 2004) (quoting Ritter v. Ritter, 690 So. 2d 1372, 1374 (Fla. 2d DCA 1997)). But "[t]he imputation of income must be based 'on appropriate findings concerning the basis for imputing income and the amount imputed.' " Id. (quoting Nieboer v. Nieboer, 816 So. 2d 1259, 1261 (Fla. 2d DCA 2002)). Here the trial court failed to make the necessary findings to support its apparent imputation of income to the former husband and thus our review of the matter is hampered. See Wabeke, 31 So. 3d at 796 ("A trial court's failure to make specific

- 10 -

factual findings with regard to alimony 'may preclude meaningful appellate review[ ] and result in a case having to be reversed and remanded.' " (alteration in original) (quoting Ruberg v. Ruberg, 858 So. 2d 1147, 1155 (Fla. 2d DCA 2003))). And even if it is appropriate to impute income to the former husband, the court must still calculate the former husband's ability to pay alimony based on his net income—just as the court must with regard to the former wife's need for alimony. The court made no findings regarding the tax consequences of the additional sums of money loaned to the former husband by ABC. Furthermore, even if a net monthly income in the amount of $7927 is supported by the evidence, this amount only exceeds the former husband's monthly expenses by about $470. The court did not address the former husband's claimed expenses—or the former wife's, for that matter—and thus did not find any to be unreasonable or nonexistent. Therefore, it remains unclear how the court determined that the former husband had the ability to pay $2500 per month in alimony. Based on the facts and findings before us, the alimony award is clearly excessive. See Kearley v. Kearley, 745 So. 2d 987, 988 (Fla. 2d DCA 1999). Despite the fact that the former wife has a need for alimony, the trial court abused its discretion in awarding alimony where there is no competent substantial evidence to support the determination that the former husband has the ability to pay. See Mills v. Johnson, 147 So. 3d 1023, 1024 (Fla. 2d DCA 2014).

Many of the same issues identified with regard to the permanent alimony award are present in the award of retroactive alimony in the amount $76,500, the amount allegedly owed by the former husband for the thirty-month period between the date the dissolution petition was filed and the date of the trial. The former husband was ordered to make payments toward this award in the amount of $750 per month. " 'A trial

- 11 -

court may award retroactive alimony when appropriate,' but an award of retroactive alimony must be based on the receiving spouse's need for alimony and the paying spouse's ability to pay." Valentine v. Van Sickle, 42 So. 3d 267, 274 (Fla. 2d DCA 2010) (first quoting Cleary v. Cleary, 872 So. 2d 299, 303 (Fla. 2d DCA 2004); and then citing Alpert, 886 So. 2d at 1002). Here "the trial court made no findings concerning the parties' incomes during the relevant [thirty-one month] period as required by section 61.08, nor did it make any specific findings supporting its conclusion that the [former husband] had the ability to pay." See Valentine, 42 So. 3d at 274. If on remand the court should again determine that it is appropriate to award the former wife permanent and retroactive alimony, such determinations shall be supported by the requisite findings and evidence.

For the reasons set forth above, we affirm the dissolution of marriage but reverse the equitable distribution and alimony awards and remand for the court to reconsider these aspects of the final judgment in conformity with this opinion.

Affirmed in part, reversed in part, and remanded with instructions.

LaROSE, C.J., and ROTHSTEIN-YOUAKIM, J., Concur.