696 So.2d 1235 (1997)
Mary C. EAGER, Appellant,
v.
George W. EAGER, Sr., Appellee.
No. 96-1247.
District Court of Appeal of Florida, Third District.
June 11, 1997.
Rehearing Denied August 6, 1997.
*1236 Hershoff, Lupino, Defoor & Gregg, Tavernier; Maurice Jay Kutner, Maitland, and Mary A. Swayze, Miami, for appellant.
Gus H. Crowell, Tavernier, for appellee.
Before JORGENSON, COPE and FLETCHER, JJ.
FLETCHER, Judge.
The former wife Mary C. Eager appeals a Final Judgment Dissolving Marriage, contending inter alia that her antenuptial property agreement is invalid and that the equitable distribution, alimony, and attorney fee awards are insufficient. We affirm in part and reverse in part.

1.
The former wife filed a petition for dissolution of marriage, to which the former husband responded with a counter-petition. One issue centered on the parties' antenuptial property agreement, the validity of which the former wife challenged on the grounds of insufficient financial disclosure, fraud, duress and coercion. The trial court entered summary judgment against the former wife as to the agreement based on affidavits and the wife's deposition and properly applied the principles of Casto v. Casto, 508 So.2d 330 (Fla.1987). The only further comment we would make in this regard relates to the former wife's contention that the agreement was the product of "duress" because she believed that the former husband would not have married her had she not signed the agreement. We note that non-marriage may indeed be the result where a potential party to a marriage declines a request to enter into an antenuptial property agreement. The other party wishing to have such an agreement may feel, for one example, that it is more important to see that her or his assets ultimately go to children from a prior marriage than it is to remarry. It is not a threat or duress for the proponent of the agreement to make it clear that there will be no marriage in the absence of the agreement. To hold otherwise would effectively provide a per se basis to invalidate most, if not all, antenuptial property agreements.

2.
The former wife contends that the trial court erred in denying an equitable distribution of the enhanced value of the former husband's business[1] (a non-marital asset). She is correct that the enhancement in value of a non-marital asset due to marital labor or effort is a material asset subject to equitable distribution. § 61.075(5)(a)(2), Fla. Stat. (1995); Webb v. Webb, 636 So.2d 883 (Fla. 3d DCA 1994). As the former husband owns fifty percent of the stock of the business, fifty percent of the enhancement in value, if any, caused by marital labor would be available for equitable distribution. The trial court found, however, that there was no enhancement in value of the business during the six-year marriage, notwithstanding that both expert accounting witnesses testified that the book value of the corporate fixed assets increased during the marital period. As the trial court recognized, "book value" is not synonymous with actual (or market) value. Malkus v. Gaines, 476 So.2d 220 (Fla. 3d DCA 1985), rev. dismissed, 482 So.2d 348 (Fla.1986); see Black's Law Dictionary 183 (6th ed.1991). Indeed, the former husband's accountant testified that there generally is no relationship between book value and market value and, in this specific instance, such was the case. (R. 2482). The former wife's expert accounting witness candidly admitted several times that she was not capable of determining the market value of the business. (R. 2540; 2563-65). As a result there is no substantial competent record evidence that the business had been enhanced in value. The trial court was correct in denying an equitable distribution based on enhancement of the value of the business.

3.
The trial court correctly found that the former wife was not entitled to an award of permanent alimony or lump sum alimony, the marriage being a short-term one, Kellerman *1237 v. Kellerman, 659 So.2d 1390 (Fla. 3d DCA 1995), between older adults. The trial court did award rehabilitative alimony, for four years, in the amount of $1,000 per month. We agree with the former wife's contention that the trial court abused its discretion in setting the amount. The former wife is not a graduate from high school (although she did obtain her GED in 1979). She worked as a waitress in various restaurants from 1973 until she married the former husband, then (in 1987) she attended real estate school. (R. 2375-76). Not until the dissolution, however, was there any attempt made by the former wife to make her living from the real estate business, there having been no need for her to do so. (R. 2381). She now works a full schedule in a real estate sales office (R. 2381), her 1995 annual gross income therefrom having been $9,400. (R. 2384). The trial record reflects that the former husband has been paying for her support in the amount of $3,500 to $4,000 per month. (R. 2349). The cash available to him is clearly more than sufficient to pay this amount without disturbing his lifestyle or endangering his $3,000,000 net worth. What is also clear in the record is that the former wife will not be able to meet her normal expenses on $1,000 per month alimony, plus whatever income she may earn from her real estate work without endangering her few and less valuable assets which would rapidly be depleted.[2] As stated in Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla.1980):
"We recognize that a trial court need not equalize the financial position of the parties. However, the trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be `shortchanged'."
Finding that the trial court abused its discretion, we direct that the trial court amend its final judgment to reflect the amount of rehabilitative alimony as $3,000 per month, commencing retroactively to May 1, 1996. The record evidence lends itself to no other reasonable result.

4.
The trial court found that the former wife is entitled to reasonable costs and attorneys' fees and that the former husband has the ability to pay them. However, the trial court declined to assess against the husband the attorney's fees for the attorney (Maurice Jay Kutner) who actually tried the case (for twenty hours) on the basis that attorney Kutner's work was duplicative of the efforts of two other of the former wife's attorneys. While we can see that some efforts may have been duplicative, certainly attorney Kutner's preparation for and work at trial was his and was necessary, especially in light of our decision concerning rehabilitative alimony. Accordingly, we reverse that portion of the Final Judgment Dissolving Marriage which denies the former wife's claim for attorney Kutner's fees and direct a rehearing thereon.

5.
Other than as set forth in this opinion, the Final Judgment is affirmed. The cause is remanded for further consistent proceedings.
NOTES
[1] The parties are in disagreement over whether the right to equitable distribution of the enhanced value (if any) of the former husband's business was waived by the former wife. Our decision renders that issue moot.
[2] Obviously her car will be needed for her work and her share of the marital home and furniture will be needed to provide a new residence. The other assets generate little income.