750 So.2d 651 (1999)
Jacqueline PINDER, Appellant/Cross-Appellee,
v.
Herbert L. PINDER, Appellee/Cross-Appellant.
No. 97-04888.
District Court of Appeal of Florida, Second District.
June 25, 1999.
*652 Mary Ellen Borja, Clearwater, for Appellant/Cross-Appellee.
Karol K. Williams and Allison M. Perry, Tampa, for Appellee/Cross-Appellant.
BLUE, Judge.
Jacqueline Pinder appeals the equitable distribution and alimony award in the dissolution of her fifteen-year marriage to Herbert L. Pinder. She raises six issues, challenging: (1) the valuation of a preschool business and determination that fifty percent of the business was a marital asset; (2) the valuation of certain Pennsylvania real estate (the preschool property) and determination that fifty percent of the real estate was a marital asset; (3) the equitable distribution of certain nonmarital assets; (4) the failure to distribute marital debt;[1] (5) the valuation of intangible marital assets; and (6) the award of a Florida house to Mr. Pinder as lump sum alimony. Mr. Pinder cross-appeals with five issues, challenging: (1) the lack of permanent alimony; (2) the failure to award special equity in the preschool business; (3) the determination that the Florida house was a nonmarital asset; (4) the failure to recognize an enhancement and/or special equity in the Florida house; and (5) the failure to award attorney's fees and costs. Based on the errors discussed below, we reverse and remand. In doing so, we offer some sympathy for the trial court's work in attempting to sort out the complicated financial affairs of these parties. Nevertheless, further work is necessary to fashion an equitable distribution that comports with the dictates of chapter 61, Florida Statutes (1995).[2]
We start first with a very brief factual background. Mr. and Mrs. Pinder were married in 1982, shortly after Mrs. Pinder was divorced from her first husband. Mrs. Pinder bought a house in Florida and the parties lived there after moving from Pennsylvania. Although titled in Mrs. Pinder's name alone, both parties contributed to the mortgage payments and worked on the house. The property settlement from the first marriage was not completed until several years into the second marriage. In the property settlement, Mrs. Pinder received sole title to a four-story building in Philadelphia, Pennsylvania, with a preschool business located in the basement and first floor. (The real property and preschool are hereafter referred to as the Philadelphia assets.) The preschool was started by Mrs. Pinder prior to her second marriage and she has continued to run the business. Mr. Pinder assisted his wife in the operation of the preschool throughout the marriage, teaching and handling all manner of duties, including administration and maintenance. After several years in Florida, the parties moved back to Philadelphia and lived in the upper floors of the four-story building. Mr. Pinder performed and/or financed some of the renovations on this space.
*653 In her first and second issues, Mrs. Pinder challenges the trial court's determination that fifty percent of the Philadelphia assets were marital property. We do not agree with the trial court's classification of these assets and reverse. Section 61.075(5)(a)1 defines marital assets as those "acquired ... during the marriage, individually by either spouse or jointly by them." Section 61.075(5)(b)1 defines nonmarital assets as those acquired before the marriage and "assets acquired... in exchange for such assets." Although Mrs. Pinder received sole title to the Philadelphia assets during her second marriage, when the paperwork from the dissolution of her first marriage was settled, these assets were received in exchange for assets she had acquired before the second marriage. Therefore, we reverse the trial court's classification of fifty percent of the Philadelphia assets as marital property. On remand, after setting aside the Philadelphia assets as Mrs. Pinder's nonmarital property, the trial court shall recalculate the equitable distribution.[3] The trial court must also determine whether their value has been enhanced by marital assets or labor. See Cornette v. Cornette, 704 So.2d 667 (Fla. 2d DCA 1997). The enhancement, if any, would be a marital asset subject to distribution. See Gill v. Gill, 632 So.2d 226 (Fla. 2d DCA 1994). Because the trial court's valuation of these assets is conflicting, we reverse and remand for the trial court to make appropriate findings.
We also disagree with the trial court's conclusion that the JMS investment account was a marital asset.[4] The undisputed evidence showed that this money came from an inheritance Mrs. Pinder received from her aunt. Section 61.075(5)(b)2 states that nonmarital assets include those acquired separately by either party by bequest, devise or descent. To the extent that Mrs. Pinder withdrew money, which was then used for marital purposes, the withdrawn money became a marital asset that has been depleted. The remaining money, however, has never been commingled and retains its character as a nonmarital asset. See Lyons v. Lyons, 687 So.2d 837 (Fla. 2d DCA 1996).
As to Mrs. Pinder's fifth issue, Mr. Pinder concedes error regarding the life insurance policies; as to those assets, we reverse. In addition, we reverse and remand for the trial court to determine whether the bank accounts are marital or nonmarital property and to distribute them accordingly.
While we affirm the trial court's finding that the Florida house is a nonmarital asset because this factual determination is supported by the record, the trial court must determine whether its value has been enhanced by marital assets or labor. See Cornette; Gill. The enhancement, if any, would be a marital asset subject to distribution. We affirm the trial court's decision to award Mr. Pinder alimony and, thus, reject Mrs. Pinder's argument in issue six. After reconsideration of all pertinent issues, the trial court should refashion the equitable distribution scheme. Subsequent to that, the trial court should redetermine Mr. Pinder's need for alimony and Mrs. Pinder's ability to pay.[5] Finally, based on the financial circumstances of the parties, the trial court should determine whether an award of attorney's fees and costs would be warranted.
*654 Reversed and remanded for further proceedings consistent with this opinion.
PATTERSON, A.C.J., and SALCINES, J., Concur.
NOTES
[1] We find no error on this point and affirm without further discussion.
[2] Some confusion and argument on appeal has resulted from an attachment to the amended final judgment. In addition to a chart showing the distribution and various values for the parties' assets, the trial court attached a schedule of assets prepared by Mr. Pinder's CPA. This appears to be an error and an unnecessary attachment; it states values contradictory to the amended final judgment and should be stricken or reconciled on remand.
[3] We note that our disposition of these issues renders moot Mr. Pinder's second issue, where he seeks a special equity in the preschool. Special equity applies to jointly held assets. See § 61.075(5)(a)5, Fla. Stat. (1995).
[4] This was raised as Mrs. Pinder's third issue. Also pertinent to this issue, Mr. Pinder concedes that the Oldsmobile and antiques should be classified as Mrs. Pinder's nonmarital assets. On remand the trial court shall correct the designation of these assets.
[5] Thus, while we make no determination that Mr. Pinder is entitled to permanent alimony, which he seeks in his first issue, neither do we foreclose the trial court from considering this on remand.