GATES, MICHAEL L„ Associate Judge.
 

 Appellant/Cross-Appellee Alice Diane Conlan (“Wife”) and Appellee/Cross-Ap-pellant Arthur James Conlan (“Husband”) appeal the final judgment of dissolution of marriage. Wife raised four issues on appeal, and Husband raised two issues on cross-appeal. We reverse and remand as to one of Wife’s issues and one of Husband’s issues, and affirm as to those issues remaining.
 

 THE FACTS
 

 Prior to the parties’ marriage in December 1998, they had entered into an Ante-nuptial Agreement. The Petition for Dissolution was filed in November 2005.
 

 Husband was 49 years old at the time of trial and had a net income of $40,000.00 per month. Wife, who was 50 years old at the time of trial, was a licensed registered nurse. She was last employed in 2002.
 
 *933
 
 Wife was in questionable health. She had entered an impaired nursing program on three occasions; suffered from depression, drug dependency, back pain, neck problems, and chronic fatigue; and took multiple medications. Many of Wife’s medical problems existed before the marriage.
 

 At the time of the marriage Husband owned, with a business partner, Italian Rose Garlic Products, Inc. (IRGP, Inc.) and three warehouse units where IRGP, Inc. operated. In 2004, the warehouse units were transferred into three separate LLCs in order to facilitate a section 1031 tax-free exchange. In December 2004, Husband and his business partner formed an additional LLC known as IRGP, LLC to acquire a new property (“1380 property”) on which to operate IRGP, Inc. The purchase price was $3.2 million with a down payment of $400,000.00 and a $2.7 million Bank of America bridge loan. The loan was satisfied when the warehouse units were sold and the remainder of the funds were provided through IRGP, Inc. and a Bank of America loan.
 

 Husband petitioned for a dissolution of marriage on November 15, 2005. In March 2006, Husband filed an application for a declaratory judgment (pursuant to Chapter 86, Florida Statutes) as the parties disagreed as to the interpretation of some of the provisions in the antenuptial agreement. In May 2006, the trial judge entered an order denying Husband’s application for declaratory relief, finding Wife did “not waive any claim to alimony, attorney’s fees, costs, equitable distribution, and/or participation in the active appreciation of assets held by the Husband prior to the marriage.” Husband’s motion to vacate, clarify or for rehearing was denied. Subsequently the case was reassigned to a different judge and Husband again filed a motion regarding his application for a declaratory judgment. At the hearing, the parties argued as to whether the declaratory judgment fell under Chapter 61 or 86. The successor trial judge found that, notwithstanding that the application was brought pursuant to Chapter 86, Florida Statutes, it still fell under the ambit of the Chapter 61 proceedings. The trial judge concluded he had jurisdiction to revisit the declaratory judgment application, found the antenuptial agreement’s language plain and understandable, and found Wife waived both passive and active participation in IRGP, Inc.
 

 Wife seeks a review of the trial court’s order denying her requests for attorney’s fees and costs. Husband cross-appeals the trial court’s award to Wife of a marital interest in the “1380 property.”
 

 WIFE’S ATTORNEY FEES AND COSTS
 

 Wife contends that the trial court abused its discretion in denying her request for attorney’s fees and costs where there was a large disparity between Husband’s and Wife’s incomes, Husband had the ability to pay, and it will result in inequitable diminution of her equitable distribution. Husband argues that Wife previously received $117,000 in temporary attorney’s fees and costs throughout the litigation, and Wife does not have a need, so the court did not err.
 

 Section 61.16(1), Florida Statutes (2007), allows the court, “after considering the financial resources of both parties, [to] order a party to pay a reasonable amount for attorney’s fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter.” To determine “entitlement to attorney’s fees and costs in a dissolution of marriage proceeding, in order ‘to ensure that both parties have similar access to competent legal counsel, the trial court must look to each spouse’s need for suit
 
 *934
 
 money versus each spouse’s respective ability to pay.’ ”
 
 Patterson & Maloney v. Gumberg,
 
 828 So.2d 403, 405 (Fla. 4th DCA 2002) (citing e.g.
 
 Rosen v. Rosen,
 
 696 So.2d 697, 699 (Fla.1997)). Need is considered “the necessity for some financial assistance to engage an attorney and pay attorney fees.”
 
 Von Baillou v. Von Baillou,
 
 959 So.2d 821, 828 (Fla. 4th DCA 2007) (quoting
 
 Satter v. Satter,
 
 709 So.2d 617, 618-19 (Fla. 4th DCA 1998)).
 

 It is appropriate for a court to award attorney’s fees to avoid an inequitable diminution of the spouse’s share of equitable distribution.
 
 Bagley v. Bagley,
 
 720 So.2d 582, 583-84 (Fla. 4th DCA 1998). The question of what is considered “inequitable diminution” is a fact-sensitive one.
 

 In June 2006 and January 2007, the trial court awarded Wife temporary attorney’s fees and costs totaling $117,000. By the end of trial, Wife owed her law firm an additional $171,173.49. The court’s final judgment awarded Wife an equalizing payment of $315,446.50 in equitable distribution to be paid by Husband in monthly installments of $5,401.21 for a seven-year period. The court also awarded her $4,124 per month in permanent alimony, imputed income to her of $1,500 per month, and stated she will receive passive earnings from investments and the equalizing payment of $2,300 (a total of $7,924). The court found her net needs per month were $8,160. Wife also retained non-marital assets totaling $238,620 ($225,000 was for her house). Husband’s net income per month is $40,000.
 

 Wife will not be able to pay her attorney’s fees and costs without substantially depleting her overall equitable distribution. In
 
 Blaine v. Blaine,
 
 869 So.2d 716, 718 (Fla. 4th DCA 2004), we “acknowledge[d] that in some cases where there has been a substantial disparity in the income and earning capacity of the parties, and one spouse would have to invade modest capital assets or use investment income in order to pay attorney’s fees, courts have held that it is an abuse of discretion not to require the spouse with the larger earning capacity to pay attorney’s fees.” In
 
 Blaine,
 
 however, both parties left the marriage with over $2 million in assets.
 
 Id.
 
 We held that although the wife may have to liquidate some of those assets to pay her fees, doing so would not substantially deplete her overall equitable distribution.
 
 Id.
 
 Thus, there was no abuse of discretion in denying her request for attorney’s fees.
 
 Id.
 

 Here, however, based on the trial court’s findings, Wife’s expenses exceed her income. Although she is receiving over $315,000 in equitable distribution, it is not a lump sum; instead, it is being paid in monthly installments of about $5,400. Having to pay roughly $171,000 in attorney’s fees (with perhaps $56,000 more for expert fees) when her equitable distribution amounts to $315,000 will result in inequitable diminution of her award, as the attorney’s fee award constitutes more than half her equitable distribution sum. Further, this full amount of equitable distribution is not presently available to her; rather, she will receive it in monthly installments over the next seven years. Based on the court’s final judgment, the only substantial asset Wife has is her house, which is worth $225,000. However, this is not necessarily available for liquidation, based on market conditions and the end result that Wife would have no place to live.
 

 It is conceded that Husband earns $40,000 per month in income, while income to Wife, based on imputed income, investments, and permanent alimony, is roughly $8,000. Therefore, Husband makes far more than what Wife will bring in each month. In
 
 Cooper v. Cooper,
 
 19 So.3d 421,
 
 *935
 
 423-24 (Fla. 4th DCA 2009), the trial court ordered the husband to pay two-thirds of the wife’s attorney’s fees, and we affirmed that ruling based on their financial circumstances, where the husband made more than two times that earned by the wife.
 

 Thus, requiring Wife to pay for her attorney’s fees will result in inequitable diminution of her equitable distribution funds. Further, Husband has the ability to pay. The trial court abused its discretion in denying Wife’s request for fees and costs. We reverse as to this issue and direct that on remand the trial court shall determine an appropriate amount to be awarded to Wife for attorney’s fees and costs.
 

 WIFE’S MARITAL INTEREST IN “1380 PROPERTY”
 

 Husband contends the court erred in finding that the “1380 property” was a marital asset. The trial court found that Husband’s ownership of the “1380 property” was marital because IRGP, LLC was formed during the marriage. However, because IRGP, Inc., a non-marital company, and the non-marital warehouses helped fund the acquisition, the court found Husband was entitled to a special equity in the property. Additionally, the court found that through marital labor, Husband actively managed and maintained the property, which contributed to the increase in value.
 

 Husband argues the property is non-marital because it was purchased through a loan unrelated to the marriage, the sale of pre-marital property, and through money from IRGP, Inc., a non-marital asset.
 

 Husband and his business partner owned IRGP, Inc., as well as the three warehouse units before the marriage. In 2004, Husband and his partner formed IRGP, LLC to acquire the “1380 property.” It was purchased for $3.2 million, with a down payment of $400,000 and a bridge loan from Bank of America (BOA), with the warehouse buildings as collateral. This $400,000 loan was satisfied when the warehouse buildings were sold. BOA loaned $2.7 million, and the remaining cash needed to close came from IRGP, Inc.
 

 Wife’s CPA testified that from 1980 until November 2005, when the warehouse properties were sold, IRGP, Inc. paid everything. Husband’s CPA testified that Husband did not expend any marital money on the 1031 reverse exchange and purchase of the “1380 property.” The “1380 property” value increased. The improvements were made by the IRGP, Inc., and no marital money was used for these improvements.
 

 Section 61.075(5)(b)(l), Florida Statutes (2007), provides that non-marital assets include assets acquired prior to marriage and “assets acquired ... in exchange for such assets.” In
 
 Pinder v. Pinder,
 
 750 So.2d 651, 653 (Fla. 2d DCA 1999), the court held that where the wife received sole title to property during her marriage, but those assets were in exchange for assets acquired before the marriage, the assets were non-marital. The evidence adduced at trial established that the “1380 property” was acquired entirely through non-marital funds (a bridge loan with the warehouse buildings as collateral, IRGP, Inc.’s funds (a non-marital company), and a Bank of America loan).
 
 See Wolfson v. Cary,
 
 488 So.2d 864, 869 (Fla. 3d DCA 1986) (finding that “[proceeds from a bank loan under which one party is solely liable can constitute a separate non-marital asset”).
 

 Even if the property was non-marital, any appreciation in value may have become marital if Husband contributed marital labor that resulted in the increased value. An “enhancement in value of a non-marital asset due to marital labor or effort
 
 *936
 
 is a material asset subject to equitable distribution.”
 
 Eager v.
 
 Eager, 696 So.2d 1235, 1236 (Fla. 3d DCA 1997) (citing e.g. § 61.075(5)(a)(2)). Further, we explained that “[ajbsent a showing that either marital funds, assets, or the work efforts of one or both spouses contributed to the enhanced value of the asset, the appreciated value of one spouse’s nonmarital asset occurring during the marriage is not subject to equitable distribution.”
 
 Oldham v. Oldham,
 
 683 So.2d 579, 580 (Fla. 4th DCA 1996) (citing e.g.
 
 Cole v. Roberts,
 
 661 So.2d 370 (Fla. 4th DCA 1995)).
 

 In reviewing the record, no evidence exists to support the trial court’s finding that Husband contributed marital labor through active management and maintenance of the property. Accordingly, the trial court erred in finding “1380 property” a marital asset. As such, we reverse this award.
 

 POLEN and MAY, JJ., concur.