CASANUEVA, Chief Judge.
 

 Louis Stanley Orloff raises three issues in his appeal from the final judgment dissolving his marriage to Joyce Lynn Orloff. Mr. Orloff first contends that the trial court failed to exercise independent judicial decision making in authoring the final judgment; next, that the trial court erred in crafting the equitable distribution package; and, finally, that the award of permanent alimony was improper as lacking sufficient findings of fact. We find no merit in his first claim but agree with his contentions regarding the equitable distribution and reverse on that basis. Our reversal of the equitable distribution portion of the final judgment renders the third issue moot because it results in the need to reconsider the alimony award on remand as well as the issue of attorney’s fees and costs.
 

 The main point of contention between the parties was the status and value of the Matrix Group Ltd., Inc. (Matrix). Mr. Orloff formed Matrix, a mail order business of sporting goods and accessories, in the late 1980s as a sole proprietorship. In 1991, before the parties were married, Mr.
 
 *273
 
 Orloff incorporated Matrix under the laws of Massachusetts and became the sole stockholder. Following the parties’ subsequent marriage and relocation to Florida, Mr. Orloff reincorporated Matrix under the laws of Florida and, as before, retained complete ownership of the corporation’s stock, serving as its president and chief executive officer. Mrs. Orloff was a valued employee of the company. In the final judgment of dissolution, the trial court found that the parties’ most significant marital asset was Matrix. This was error because Matrix, under the circumstances of this case, is a nonmarital asset.
 

 Nonmarital assets are defined as “Ms-sets acquired and liabilities incurred by either party prior to the marriage, and assets acquired and liabilities incurred in exchange for such assets and liabilities.” § 61.075(6)(b)(l), Fla. Stat. (2009). This court in
 
 Pinder v. Pinder,
 
 750 So.2d 651 (Fla. 2d DCA 1999), considered a case with a similar issue of whether an asset was nonmarital or marital. In that case, the property settlement and conveyances concerning certain Philadelphia real estate owned during Mrs. Pinder’s first marriage were not completed until well into her second marriage when she received sole title to the Philadelphia property. In the later dissolution action of her second marriage, the trial court classified 50% of the Philadelphia property as a marital asset. We reversed that classification, saying that “[a]lthough Mrs. Pinder received sole title to the Philadelphia assets during her second marriage, ... these assets were received in exchange for assets she had acquired before the second marriage.”
 
 Id.
 
 at 653. We directed that on remand the trial court should set aside the Philadelphia assets as her nonmarital property and recalculate the equitable distribution scheme.
 
 Id.
 

 Also instructive is
 
 Conlan v. Conlan,
 
 43 So.3d 931 (Fla. 4th DCA 2010). Prior to his marriage, Mr. Conlan was a co-owner of a business and three warehouse units from which the business operated. After his marriage, a new but similar company was formed and it desired to purchase new premises for its operation. The warehouse units owned by the older company were transferred into three separate limited liability companies to facilitate a tax-free exchange for the new property. The proceeds from the subsequent sale of the three warehouse units were used to satisfy a bridge loan that the newly-formed business had taken out to purchase its new premises. In the Conlans’ dissolution action, the trial court concluded that the newly-purchased property was a marital asset because the new company had been formed during the marriage. The Fourth District reversed, concluding that the property was nonmarital because it was acquired entirely with nonmarital funds.
 
 Id.
 
 at 935.
 

 In the Orloffs’ case, similar to
 
 Pin-der
 
 and
 
 Conlan,
 
 Matrix remained a corporation solely owned by Mr. Orloff both before and after the marriage. Pursuant to statute and in accord with the above case law, this asset must be classified as nonmarital because Mr. Orloff used solely nonmarital assets to form it. That Matrix was reincorporated under Florida law upon the parties’ relocation to Florida is not material to this conclusion.
 
 See Conlan,
 
 43 So.3d at 935 (holding that despite the creation of the new company during the marriage, it was a nonmarital asset because it was formed solely with the use of nonmarital assets).
 
 [1]
 

 
 *274
 
 But this does not conclude the issues concerning Matrix. We turn next to the trial court’s categorization of assets that Matrix held in the Louis S. Orloff Grantor Retained Annuity Trust (the GRAT).
 
 [2]
 
 Several years prior to the filing of the parties’ dissolution petition, Matrix was involved in a lawsuit from which it expected to receive a substantial recovery.
 
 [3]
 
 In anticipation of these proceeds, Mr. Or-loff, on advice from a tax specialist, created the GRAT. Mr. Orloff and his cousin are the trustees of the GRAT. Mr. Orloff, as sole shareholder, president, and CEO of Matrix, conveyed 60% of the Matrix stock into the GRAT, conveyed 20% to Mrs. Orloff, but retained the remaining 20% in his name. Because Matrix stock was used to create the GRAT and because of Mr. Orloffs hand in controlling Matrix, in the final equitable distribution scheme the trial court categorized this 60% of the Matrix stock held by the GRAT as marital, the 20% held by Mr. Orloff as marital and the 20% held by Mrs. Orloff as marital.
 

 This was error in part. Based on the same reasoning outlined above and as applied to the provenance of the corpus of the GRAT, because Matrix was nonmari-tal, 60% of its stock remained nonmarital when Mr. Orloff transferred it into the GRAT.
 
 [4]
 
 For these same reasons, Mr. Or-loffs retained 20% of Matrix stock remained his nonmarital property because it was an asset acquired prior to the marriage. But the trial court correctly categorized the 20% conveyed to Mrs. Orloff as a marital asset because, pursuant to statute, it was conveyed to her during the marriage.
 
 See
 
 § 61.075(6)(a)(l)(a) (defining marital assets to include “[a]ssets acquired and liabilities incurred during the marriage”).
 

 One last remaining issue must be addressed. Historically, the business of Matrix was seasonal. And, by consequence, when cash flow problems developed, Mr. Orloff solved these problems by borrowing from and then repaying these loans from corporations and partnerships that were created, owned, and operated by either himself, his parents or grandparents, siblings, aunts, uncles, or cousins.
 
 [5]
 
 The primary entity that helped Matrix throughout its life was the Orloff Family Limited Partnership (the OFLP) that was created with the assets of Mr. Orloffs parents and thereafter controlled by Mr. Orloffs father until his death. Mr. Orloff, before his marriage to Mrs. Orloff, was given a minority share in the OFLP as were other members of his extended family; but Mrs. Orloff held no share in the
 
 *275
 
 OFLP. The trial court erroneously included the value of Mr. Orloffs stake in the OFLP as a marital asset in the equitable distribution schedule. It is a nonmarital asset because it was acquired prior to the marriage.
 
 See
 
 § 61.075(6)(b)(l).
 

 On remand, the trial court shall recalculate the equitable distribution package with Matrix classified as a nonmarital asset and remove the following nonmarital assets from the equitable distribution equation: the 60% of Matrix stock in the GRAT and Mr. Orloffs 20% of Matrix stock. However, any enhancement in value of Matrix since the date the parties married is properly considered a marital asset if during the marriage such enhancement was due to Mr. Orloffs or Mrs. Orloffs contribution of marital labor or marital funds.
 
 See
 
 § 61.075(6)(a)(l)(b);
 
 see also Conlan,
 
 43 So.3d at 935-36;
 
 Eager v. Eager,
 
 696 So.2d 1235, 1236 (Fla. 3d DCA 1997).
 

 Because our disposition requires a major adjustment in the equitable distribution scheme, we also direct that the trial court reconsider the alimony award to Mrs. Or-loff in light of its recalculation of equitable distribution. If it thereafter decides to award alimony, it shall also make sufficient findings of fact as required by section 61.08(2) to support that award in order to facilitate further appellate review, if necessary. The denial of attorney’s fees and costs to either party in the final judgment of dissolution will also require reconsideration upon remand.
 

 That part of the final judgment of dissolution equitably distributing the assets, awarding alimony, and denying fees and costs to either party is reversed; in all other respects, the final judgment of dissolution is affirmed; and the cause is remanded for further proceedings in accordance with this opinion.
 

 Affirmed in part, reversed in part, and remanded.
 

 DAVIS and WALLACE, JJ., Concur.
 

 [1]
 

 . Our conclusion that Matrix must be considered a nonmarital asset moots Mr. Orloff's other issues relating to the valuation of the
 
 *274
 
 company and whether the trial court correctly inferred that he depleted that asset.
 

 [2]
 

 . A GRAT is a financial instrument that allows the grantor to gift large financial amounts to family members without paying the gift tax. The grantor deposits the valuable assets into the GRAT which is set up as an annuity. The trustee(s) thereafter make annual payments to the grantor for a certain term as specified in the trust document. At the end of the specified term, the beneficiary, who must be a family member, receives the remaining value of the trust as a gift. If the grantor dies before the end of the specified term, the beneficiary receives the value of the trust then. Noel C. Ice,
 
 What You Should Know About Your GRAT (Grantor Retained Annuity Trust)—How To Make Large Gifts Without Paying Gift Tax or Using Any Gift Tax Unified Credit,
 
 (2003), http://www.trustsand estates.net/GRATs/GRATMmClIce.htm.
 

 [3]
 

 . Eventually, this lawsuit resulted in an award of more than nine million dollars in favor of Matrix.
 

 [4]
 

 . This conclusion is further underscored by the fact that the entity that is the GRAT was not under the jurisdiction of the trial court.
 

 [5]
 

 . Mr. Orloff properly admits that his shares in many of these other entities are marital assets.